BRAY v. JOHNSON et al. (two cases).

(Circuit Court of Appeals, Fourth Circuit.   November 5, 1908.)

Nos. 766, 783.

1. BANKRUPTCY (§ 249\*)—REFEREES—JURISDICTION—CONTINUANCE OF BANK-
   RUPT'S BUSINESS.
      Though courts of bankruptcy are authorized to continue the bankrupt's business, the referees should not exercise such authority where the transaction is one of magnitude, nor in any case issue trustees' certificates to raise money to accomplish that end.
      [Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. § 347; Dec. Dig. § 249.\*]

2. BANKRUPTCY (§ 223\*)—REFEREES—FEES.
      Bankr. Act 1898 (Act July 1, 1898, c. 541, 30 Stat. 556 [U. S. Comp. St. 1901, p. 3437]) § 40, providing for a commission of 1 per cent. to be paid to a referee on the sums paid as dividends, was amended by Act Cong. Feb. 5, 1903, c. 487, § 9, 32 Stat. 799 (U. S. Comp. St. Supp. 1907, p. 1029), declaring that referees shall receive as full compensation a fee of $15, deposited with the clerk when the petition is filed, and 1 per cent. commission on all moneys disbursed to creditors by the trustee. *Held*, that where referees continued the bankrupt's business in order to complete certain government contracts, and for its purpose raised and paid out $480,000 during a period of 18 months, and distributed to creditors some $30,000, they were only entitled to a percentage on the latter sum.
      [Ed. Note.—For other cases, see Bankruptcy, Dec. Dig. § 223.\*]

3. BANKRUPTCY (§ 223\*)—REFEREES' FEES—ALLOWANCE—CONCLUSIVENESS.
      Where a referee in bankruptcy continuing the bankrupt's business applied to the court to determine the amount he was entitled to receive as fees, and the court granted an excessive allowance on an improper construction of the bankruptcy act as amended, which decree was unappealed from and was acquiesced in by all the parties, it was conclusive as to an amount paid to the referee by the trustees thereunder, and would not be disturbed on a subsequent appeal from an allowance made on the same basis to the referee's successor.
      [Ed. Note.—For other cases, see Bankruptcy, Dec. Dig. § 223.\*]

McDowell, District Judge, dissenting.

---

\*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

Petition to Superintend and Revise, and Appeal from, the District Court of the United States for the Northern District of West Virginia, at Parkersburg.

In the month of February, 1904, the Evansville Contract Company was duly adjudged a bankrupt, and the cause referred to George W. Johnson, referee. The bankrupt company at the time of its failure was engaged in the execution of certain large contracts with the United States government for the building of dams on Congaree river, S. C., two dams in the Ohio river, Nos. 2 and 3, at or near Pittsburg, Pa., and lock No. 18 on said river, a short distance above Parkersburg, W. Va. Considerable work had been done on the contracts at that time, and the company was under bond with the United States Fidelity & Guaranty Company, of Baltimore, to complete their undertakings, said latter company having authority under the provisions of their contract of suretyship, upon the failure of the bankrupt company, to take charge of and complete the work. At a meeting of the bankrupt's creditors, at their instance, upon the petition of the trustee, and with the assent of the surety company, it was, on the 11th day of April, 1904, ordered by the referee that the bankrupt's trustees, who in the meantime had been elected and duly qualified, should proceed to complete the contracts mentioned above, the belief being that there would be realized therefrom from $150,000 to $200,000. The work under this order commenced in April, 1904, and continued until November, 1905. In order to secure the funds to do so, it was necessary to raise considerable money, and said referee directed the issuance of trustees' certificates by the trustees for the sum of $75,000. In the conduct of the work, large sums of money were handled by the trustees, aggregating, with the trustees' certificates aforesaid, and $65,000 from the sale of the plant, approximately $480,000. At the completion of the contracts, some $28,000 was realized as the result of the undertaking by the creditors and trustees; the entire sums handled by the trustees arose exclusively from the sale of trustees' certificates, amounts paid by the government on the contracts, and the sale of the plant; and that the entire sum expended by said trustees was on account of payments made in completing the unfinished contracts, except $1,000, which was paid to laborers due at the time of the bankruptcy, leaving in hand $28,000. The referee seems to have given considerable attention to the expenditure of the money handled by the trustees, and gone to great trouble in connection therewith, as he did in and about the management of the case generally, which was one of considerable magnitude and unusual labor and difficulty. He countersigned checks issued by the trustees, required weekly and monthly reports to be made to him, heard and considered questions arising upon 40 different petitions in the course of the litigation, and entered 80-odd orders.

On the 28th of September, 1904, during the progress of the work, the referee, George W. Johnson, presented his petition to the court, asking an interpretation of Bankr. Act (Act July 1, 1898, c. 541, 30 Stat. 556 [U. S. Comp. St. 1901, p. 3437]) § 40, as amended by Act Feb. 5, 1903, c. 487, § 9, 32 Stat. 799 [U. S. Comp. St. Supp. 1907, p. 1029]), as regards the compensation to which he was entitled. And said court, by its decretal order of that date, entered by the then District Judge, Hon. John J. Jackson, adjudged that he was entitled to a commission of 1 per cent. upon all funds paid out by the trustees in the conduct and administration of the business ordered to be continued by the referee as aforesaid. And said decree further recited that there had been expended by the trustees in the conduct of the business over $150,000, ordered the trustees to pay the referee out of funds in their hands, on account of commissions, the sum of $1,000, the same to be charged against the referee when the business in hand should have been fully completed. Under this decree, during the progress of the work, the trustees paid to the referee a further sum of $500. Referee Johnston's term of office expired in November, 1906, and T. A. Brown was appointed in his stead. At the completion of the work, and after the expiration of the term of the referee, to wit, on the 25th of January, 1907, he filed his petition asking compensation as referee, and claiming that he should be paid a commission of 1 per cent. on $480,000, pursuant to the order of Judge Jackson aforesaid, of

the 28th of September, 1904. Issue was duly joined on this petition, and his honor, Judge Dayton, on the 27th of August, 1907, entered the decree under revision here, holding, in effect, that he was precluded by the previous decree of Judge Jackson from ascertaining the amount of this compensation, and that said referee was entitled to 1 per cent. on $430,657.96, less the sum of $1,500 theretofore received by him, thus giving judgment for $2,806.59 against the bankrupt's estate.

J. A. Dupuy, for appellant.

J. W. Vandervort (C. D. Merrick and Van Winkle & Ambler, on the brief), for appellees.

Before PRITCHARD, Circuit Judge, and WADDILL and Mc-DOWELL, District Judges.

WADDILL, District Judge (after stating the facts as above). The precise questions presented for consideration are what compensation, if any, the referee is entitled to receive upon funds handled through the bankrupt's trustees in conducting the business ordered to be continued by the referee, and what effect should be given to a decree of the court entered making an allowance on account of such compensation to the appellee, and from which no appeal was taken.

The first question is one that would seem to be determined by the plain letter of the bankruptcy act, and the rules prescribed by the Supreme Court in pursuance thereof. Section 40 of the act of 1898 (July 1, 1898, c. 541, 30 Stat. 556 [U. S. Comp. St. 1901, p. 3437]) on this subject provided for a commission of 1 per centum on the sums paid as dividends, or one-half of 1 per centum on the amount to be paid creditors upon the confirmation of a composition. The act as amended on the 5th of February, 1903, c. 487, § 9, 32 Stat. 799 (U. S. Comp. St. Supp. 1907, p. 1029), section 40a, is as follows:

"Referees shall receive as full compensation for their services, payable after they are rendered, a fee of fifteen dollars deposited with the clerk at the time the petition is filed in each case, except when a fee is not required from a voluntary bankrupt, and twenty-five cents for every proof of claim filed for allowance, to be paid from the estate, if any, as a part of the cost of administration, and from estates which have been administered before them, one per centum commissions on all moneys disbursed to creditors by the trustee, or one-half of one per centum on the amount to be paid to creditors upon the confirmation of a composition."

The amended section, it will be observed, modifies the language of the original act, which allowed a commission of 1 per centum on sums paid as dividends, and, in addition to otherwise providing largely for the increase of the compensation of referees, authorizes a commission of 1 per centum on "all moneys disbursed to the creditors by the trustee." This language is clear, and its meaning too plain to admit of controversy. It is as positive as its purpose is apparent, to fix definitely what this judicial officer shall receive from the funds coming under the administration of the court, as to which he might be called upon to take official action. The amendment of 5th of February, 1903, c. 487, § 18, 32 Stat. 800 (U. S. Comp. St. Supp. 1907, p. 1033), by section 72, emphasized the meaning of the previous provision, and is as follows:

"That neither the referee nor the trustee shall in any form or guise receive, nor shall the court allow them, any other or further compensation for their services than that expressly authorized and prescribed in this act."

Section 2 of the General Orders, No. 35 (18 Sup. Ct. ix), prescribed by the Supreme Court for the enforcement of the bankruptcy law, also expressly prohibits this charge by the referee, in that it provides that:

"The compensation of referees prescribed by this act, shall be in full compensation for all services performed by them under the act, or under these general orders,"

—but this rule provides for certain expenses which may be allowed by the court. The claim here asserted is clearly not authorized by the original bankrupt act, nor under the amendment of February 5, 1903, and section 72 of the amendments expressly prevents referees from receiving in any "form or guise" anything other than his statutory compensation, and inhibits the court from making such allowance. The reason why this allowance cannot and should not be made or thought of for a moment is apparent. The courts are authorized to continue the business of bankrupts, and this referee exercised this authority, which, in passing, it may be said as to a transaction of this magnitude, without the express sanction of the court, was of exceedingly doubtful propriety, and the issuance of trustees' certificates for $75,-000, or indeed for any amount, assuming it should be done in a bankruptcy case at all, ought manifestly not to be thought of by a referee. The temptation, if a referee could thus increase his compensation, to err, would be too great. Serious questions involving his personal interest, upon which he would have judicially to pass, would be continually presented, and the result of such a system would soon be disastrous, and bring the courts of bankruptcy into disrepute. The objections to such an allowance are fundamental, aside from the fact that the compensation is fixed by law. To have the pay of a referee, acting in a purely judicial capacity, respecting a particular transaction, in which he acts for and on behalf of the court, measured by the extent of the fund that might be handled under and in pursuance of decrees and orders entered by himself, would be as anomalous as it would be unfortunate, because of the delicate and embarrassing position in which he would be constantly placed, as manifestly his personal and financial interest in what he was doing would frequently arise, and result in having his best motives impugned. This case affords a striking illustration of why such a thing should not be done, and the consequences that could be expected to flow therefrom. The fund on which a commission can be allowed, as between two referees, is some $30,000, or $300, whereas the claim asserted by one referee is on some $480,000 or for $4,800, being on the amount expended in creating the $30,000, a difference to the referee of $4,500 in his compensation in a single case, as the result of the exercise of his own judicial discretion in deciding to complete partly executed contracts of the bankrupt company. Judicial officers should not be placed in a position where their private interests necessarily become involved in their official action, and, should it ever be done to the extent that the view of the bankrupt law contended for by the referee would bring about, the federal judicial system would sustain a serious blow, and quickly be deprived of its independence, its greatest source of strength with the people and bar. The bankrupt act, in our judgment, affords no ground for an interpretation that would be

so far-reaching in its results, or bring about such serious consequences.

It is not intimated or suggested here that the referee was guilty of the slightest impropriety. On the contrary, he was supported in all that he did by the creditors and trustees, and their counsel, and he expended much time and performed great labor, showing the utmost fidelity to his trust throughout. But the hazard of such an undertaking as was embarked upon was too great for a court or referee to enter on. The contracts themselves were of a kind extremely difficult to handle, subject to many vicissitudes; and, while it may have been supposed that considerable money could be realized, the result proved how far off all such calculations were—$28,000, instead of from $150,000 to $200,000 was realized as the result of more than 18 months' work; and it may be said that this was rather providential, for, taking into account the character of the contracts, and the time taken to complete them, it might just as likely have resulted in $100,000 shortage, as an apparent saving of $28,000. The commission claimed by the referee, if it can be allowed on this sort of venture, would be only limited by the magnitude of the undertaking that might be gone into, and could never have been contemplated by the law. In re Mammoth Lumber Co. (D. C.) 116 Fed. 731; Dressel v. Lumber Co. (D. C.) 119 Fed. 531.

The force that should be given to the decree of Judge Jackson, fixing the compensation of the referee, and by which the court felt bound, presents a question of more difficulty. We are not inclined to accept the view the lower court took of the effect of this decree, further than as to the $1,000 named therein, and the $500 subsequently paid thereunder. It is true by this decree an interpretation generally is placed upon the bankrupt act as affects the commission of a referee, but, inasmuch as we think the same is clearly wrong, we are unwilling to carry out the same, except as to payments already made thereunder.

There seems to be some dispute in the record as to whether formal notice was given of the application for this order; but whatever may be the fact as to this, counsel for the trustees was in court, knew of and made no objection to its entry, and subsequently the trustees acquiesced in it and paid the money thereunder, and, after the lapse of three years, the court is disinclined to disturb the same.

There is much force in the contention of counsel that the trustees, in paying the $1,500, felt that they were but carrying out the directions of the court over them, and that the order, being one in favor of the referee clearly not contemplated by the statute, is of itself void. What is said in this respect would be true, or certainly entitled to great weight, if the referee had entered the order himself; but he did not. The same was submitted to the judge, with the knowledge of the parties, entered by him after full consideration, not appealed from, and apparently in good faith concurred in by all parties; and the same should not now be set aside, especially as the referee in equity and good conscience may be said to have earned many times more than what he received under it, and he doubtless would never have saddled himself with the detail of work that he did if he had not supposed that he was to receive the remuneration charged.

For the reasons stated, the decree of the lower court awarding to the appellee, George W. Johnson, the additional compensation of

$2,806.58, will be reversed, with costs, as well upon the application for review as upon the appeal.

McDOWELL, District Judge, dissents.