### In re COLUMBIA COTTON OIL & PROVISION CORPORATION.

#### VARNEY v. HARLOW et al.

(Circuit Court of Appeals, Fourth Circuit. December 18, 1913.)

#### No. 1,197.

BANKRUPTCY (§ 223*) — COMPENSATION OF REFEREES — COMMISSION ON MONEY CONSTRUCTIVELY PAID TO LIENHOLDERS.

Where mortgaged property of a bankrupt corporation is sold by its trustee free from the lien with the consent of the bondholders who buy it in, being permitted for their convenience to use their bonds in payment of their bid except as to the amount required to pay the costs and expenses of the sale, the referee, under Bankr. Act July 1, 1898, c. 541, § 40a, 30 Stat. 556 (U. S. Comp. St. 1901, p. 3436), as amended by Act Feb. 5, 1903, c. 487, § 9, 32 Stat. 799 (U. S. Comp. St. Supp. 1911, p. 1500), which allows him a commission "on all moneys disbursed to creditors by the trustee" is entitled to such commission from the purchase money on the amount constructively disbursed by the trustee to the lienholders.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. §§ 888–894; Dec. Dig. § 223.*]

Petition for Revision of Proceedings of the District Court of the United States for the Eastern District of Virginia, at Alexandria, in Bankruptcy; Edmund Waddell, Jr., Judge.

In the matter of the Columbia Cotton Oil & Provision Corporation, bankrupt. On petition by Walter U. Varney, referee, against Leo P. Harlow, trustee, Milton E. Ailes and Clarence F. Norment, attorneys in fact for certain bondholders, and the American Security &

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

Trust Company, mortgage trustee, to revise an order denying petitioner a commission on the proceeds of mortgaged property. Reversed.

D. Lawrence Groner, of Norfolk, Va., for petitioner.

Before PRITCHARD and WOODS, Circuit Judges, and ROSE, District Judge.

ROSE, District Judge. The petitioner is a referee in bankruptcy. He will be called the "referee." One of the respondents is the trustee in bankruptcy of the Columbia Cotton Oil & Provision Corporation. He will be styled the "trustee," it the "bankrupt." The others are the trustee under a mortgage of the bankrupt intended to secure bonds issued by it, and the attorneys in fact of the holders of such bonds. The trustee, these attorneys, and the individual holders of bonds will be indifferently referred to as the "bondholders."

The question in the case is whether the referee is entitled to be paid $879.55, being one per cent. upon the amount constructively disbursed by the trustee to the bondholders.

An involuntary petition in bankruptcy was filed September 13, 1911. On October 9th adjudication followed. The real and apparently most, if not all, of the personal property of the bankrupt was subject to the lien of the mortgage already mentioned. One hundred thousand dollars of bonds secured by it were outstanding. The mortgaged property came into the hands of the trustee. It was by order of the referee appraised. The appraisers reported that, if it was to be used for the purposes for which it was intended, it was worth $155,000. If it was to be dismantled and the machinery sold as junk, its value was only $101,000.

On December 26th the trustee asked for an order of the District Court to sell clear of liens. Due notice of this application was given by the referee. On January 5, 1912, the bondholders united in the request for such sale. It was ordered. The decree was obviously drafted to meet the bondholders' convenience. If they became purchasers they could turn in their bonds as cash. On February 7th the sale took place. The bondholders bought in the property for $90,000; that is, for some $10,000 less than the face of their lien claim. The sale was ratified in due course and without objection. The referee performed the same services he would have been called upon to render had some one other than the bondholders been the successful bidder, except that he did not have to countersign the check or checks which in the latter event the trustee would have given to the bondholders or their representatives. The latter paid the trustee $2,044.30 to cover the cost and expenses of the sale. No other cash passed between the trustee and the bondholders. The District Court directed him to indorse on the bonds as a payment thereon the difference between the purchase price and the cash paid to him for costs and expenses, or $87,955.70. The bondholders were allowed to file as general creditors their claim for the upwards of $12,000 still due them.

The learned judge below treated the statutory commission of the trustee as part of the costs and expenses of the sale to be paid by the

bondholders. He did not think that within the meaning of the statute any money had been disbursed to the bondholders by the trustee, and he therefore refused to allow the referee a commission of one per cent. upon the $87,955 which they had nominally received. Such action was taken upon his own motion. It was not asked for by the bondholders or by anyone else.

The referee then filed his petition to superintend and revise. All the respondents had the due and usual notice of its pendency here. None of them entered their appearance to oppose it. Apparently they are perfectly willing that the allowance for which the referee asks shall be given him. Upon the adjudication in bankruptcy, the bondholders doubtless realized that a judicial sale of the mortgaged property had become inevitable. The mortgage provided that one selling under it should receive a commission of 5 per cent. It would be much cheaper for the sale to be made by the trustee under the direction of the bankruptcy court. Such proceeding would doubtless be simpler and more speedy. The bondholders wished to avail themselves of it.

Two questions may arise with reference to the allowance of commissions to referees and trustees on the money paid to lienholders out of the proceeds of property subject to their lien:

First, are those officials entitled to commissions at all?

Second, if they are, out of what funds are they to be paid?

The latter problem presents itself when security has been sold by the trustee against the lienholder's consent or without his knowledge. This court has said that under such circumstances he cannot be compelled to contribute to the costs of the general administration of the bankrupt estate. Mills v. Virginia-Carolina Lumber Co., 164 Fed. 171, 90 C. C. A. 154, 21 L. R. A. (N. S.) 901.

Such is, however, not the case here. The sale was made with the consent and approval of the bondholders. There is no question of saddling them with any part of the expense of the general administration of the bankrupt estate, if indeed there was any estate, other than that covered by their mortgage, to be administered. There is nothing in the circumstances to make it inequitable that they shall be called upon to pay whatever is the legal cost of making such sale in the way in which it was made.

The question whether the law entitles the referee to commissions on the amount constructively disbursed by a trustee to lienholders out of the sum for which they have bid their security in is the only one which arises in this case.

By the original act of 1898 the referee's one per cent. was to be reckoned only on the sums paid as dividends and commissions. It was held that he was not entitled to any allowance upon payments made to secured creditors, as they were not dividends in the bankruptcy sense of that term. It soon became evident that the referees were inadequately compensated. It not infrequently happened that practically all the assets of large and troublesome estates in the end were awarded to secured creditors. In 1903, for the avowed purpose of remedying this state of affairs, Congress so amended section 40

of the act as to allow a one per cent. commission to referees "on all moneys disbursed to creditors by the trustee." Since then the commission has been reckoned on all sums paid to creditors irrespective of whether they were secured or unsecured.

In the case before us was any money paid the lienholders? Literally no. Not a dollar was handed over by the trustee to them. The relatively small sum which passed between them was paid by them to him. Is this fatal to the referee's contention? If at the sale any other than the bondholders had bought, the purchase price would have been received by the trustee, and, less the costs and expenses, would have been by him disbursed among the bondholders. In that event the referee would have been entitled to his commissions. If, because of uncertainty as to the extent or validity of their lien, difficulty in ascertaining speedily and accurately how great the expenses would be, or the character and amount of prior claims, or for any other reason the bondholders had been required to pay their bid in cash, the same thing would have happened. It would hardly seem that the referee's rights should be different merely because for the convenience of the bondholders they were excused from paying in $90,000 and getting $87,955 back. The payment of the latter sum was as effectually made to them by crediting it on their bonds as it could have been in any other form. It does not seem wise to make substantial rights depend on such unessential differences. The way of making payment adopted in this case is far the simplest and most convenient for everybody. Nothing is to be gained by holding that if it be adopted the referee will lose what would come to him if the more roundabout and troublesome method of doing the same thing were employed. The learned judge below recognized that the trustee was entitled to commissions on the full amount of the purchase price, as being a sum disbursed by him or turned over to lienholders.

Subsequent to 1903 and prior to 1910, section 48 allowed trustees commissions on all sums disbursed by them. By the amendments of the later year the allowance was declared to be "on all moneys disbursed or turned over to any person, including lienholders, by them." A similar change was made in the provisions of the section fixing the compensation of receivers or marshals. Section 40, dealing with the fees of referees, was left as it had been amended in 1903.

Does the fact that section 48 was altered by the insertion of the words "turned over to any person, including lienholders," while section 40 was not, indicate that Congress wished to make a distinction in this respect between trustees, receivers, and marshals on the one hand, and referees on the other? A very vital and important difference was established by the act of 1903. Before that time trustees' commissions, as well as those of referees, were calculated upon the amount paid as dividends and commissions. By the amendatory act of the last-mentioned year trustees were allowed commissions on all sums disbursed by them.

This court has pointed out why it would have been highly inexpedient that any similar provision should have been made as to referees. Bray v. Johnson, 166 Fed. 57, 91 C. C. A. 643.

As we have already seen, the allowance to the latter was increased in another way. The amendment of section 48 made in 1910 was not so much for the purpose of changing the law as it was to settle a question upon which the courts had divided by declaring the agreement of Congress with those decisions which had held trustees entitled to commissions on sums turned over to lienholders. Report No. 691, Senate Judiciary Committee, 2d Session, 61st Congress. It does not seem probable that Congress intended in so indirect a manner to change the construction which had been previously put upon section 40. 2 Remington on Bankruptcy, § 2105.

It follows that the referee was entitled to the allowance claimed.

Although we have not been able to concur with the learned judge below in the conclusion he reached, we wish to record our emphatic approval of his course in taking up on his own motion the propriety of permitting the allowance to stand. District judges should scrutinize with care the commissions and fees asked for by the officers of their courts. Absence of objection to a charge made by a referee does not always indicate that those out of whose pockets it will come are satisfied that it is either just or legal. Other considerations may close their mouths, or those of the members of the bankruptcy bar through whom they must act. It is very possible that the learned judge is right in deprecating such allowances to referees. It is frequently, perhaps usually, expedient that all the property of a bankrupt estate, as well that subject to liens as that free of them, shall be administered in the court of bankruptcy. It will be unfortunate if the imposition of a charge of one per cent. in favor of the referee on the selling price of mortgaged property of great value shall discourage resort to those courts. It might be that a discretion to reduce the allowance when it seemed just and expedient so to do might by statute be wisely conferred upon the courts.

A peculiar situation as to costs presents itself. The respondents neither below nor here have made the slightest objection to the allowance to the referee of the sum to which we hold him entitled. It would not be just to impose the costs upon them. At the argument here the counsel for the referee acquiesced in the suggestion that of necessity his client would have to pay them. The order below will be reversed, but the petitioner must pay the costs.

Reversed.