### In re BREAKWATER CO.

(District Court, E. D. Pennsylvania. February 2, 1915.)

No. 5029.

1. BANKRUPTCY ☞223, 368—FEES OF REFEREE AND TRUSTEE—COMPUTATION.
    Where the assets of a bankrupt contracting corporation were practically all covered by secured claims, but a plan was devised, in order to carry out the bankrupt's contracts and preserve its property, whereby its assets were to be transferred to a new corporation, the secured creditors to receive preferred stock and the others common stock for their claims, and in pursuance of that plan the assets were sold subject to the liens to the bondholders for a small sum, the commissions of the referee and the trustee should be figured, not on the amount of cash actually received at the sale, but upon the total value of the assets, which under the plan adopted were constructively handled by them in the settlement of the estate.
    [Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. §§ 571, 888–894; Dec. Dig. ☞223, 368.]

2. BANKRUPTCY ☞223—FEES OF REFEREE—PRIOR AGREEMENT.
    An agreement by a referee in bankruptcy to accept a less fee than he was entitled to receive under the law, made for the purpose of allowing the adoption of a reorganization plan whereby the assets might be preserved for the benefit of creditors, and which was approved by practically all of the creditors, is not illegal.
    [Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. §§ 888–894; Dec. Dig. ☞223.]

Bankruptcy proceedings against the Breakwater Company. On petition of the American Surety Company to revise an order of the referee fixing the fees of the referee and the trustee. Petition dismissed, and order affirmed.

Henry C. Willcox, of New York City, for petitioner American Surety Co., of New York.

Owen J. Roberts, of Philadelphia, Pa., for trustee.

☞For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

THOMPSON, District Judge. The question for decision in the present case is whether fees of $6,500 each ordered paid to the referee and trustee are greater than allowed by the Bankruptcy Act (Act July 1, 1898, c. 541, 30 Stat. 544 [U. S. Comp. St. 1913, §§ 9585, 9656]).

When the trustee was elected, the property of the bankrupt, which was engaged in building breakwaters for the United States government, was distributed throughout various states of the Union, the Hawaiian Islands, and the Province of Ontario, Canada: It consisted, inter alia, of stone quarries with their various equipment, floating equipment, bills receivable, and cash.

The trustee's account shows the amount of the inventory and appraisements, together with uninventoried assets, to be $1,066,467.91. Against this property was a mortgage of $1,000,000, under which bonds to that amount were outstanding and coupons amounting to $50,000 were due. Upon an order of the referee authorized by the vote of the creditors, the assets were sold by the trustee to Alexander B. Siegel, acting for the bondholders, subject to the lien of the mortgage and all other valid liens for $75,000.

It appears by the record that various efforts had been made by the trustee to make some disposition of the assets of the company which would to the greatest possible extent benefit the unsecured creditors. In addition to the liens of the mortgage, admiralty liens existed against the floating equipment of the company approximating $75,000. A claim had been filed by the Assets Realization Company, the mortgagee, in the amount of $1,028,384.17, and the aggregate indebtedness shown by the schedules was $2,888,173.49.

After various attempts to save the property as a going business for the benefit of the creditors, through the efforts of the trustee, a corporation was formed known as Coast & Lakes Contracting Corporation, and a plan was submitted to the creditors for the purchase by that company directly, or through an intermediary, of all the real estate, plant, and equipment of the Breakwater Company for the purpose of completing the existing contracts of the bankrupt and continuing its business. The stock capitalization of the company as authorized provided for 15,000 shares of preferred stock of the par value of $100 each, $1,500,000; and 10,000 shares of common stock of the par value of $100 each, $1,000,000.

It was proposed, in consideration of the sale of the assets of the bankrupt to the company by the trustee for the sum of $75,000 in cash subject to the liens, that the holders of the mortgage bonds receive 10 shares of preferred stock for each $1,000 bond, taking up $1,000,000 of preferred stock, and the holders of coupons amounting to $50,000 receive preferred stock at par to that amount, the balance of the preferred stock to be reserved for future issue; that unsecured creditors consisting of holders of unsecured notes of and claims against the Breakwater Company receive for their claims 50 per cent. of the face amount thereof, or approximately $700,000, in common stock; the balance of common stock, as far as material to the question arising in this case, to be reserved for future issue. The holders of the first mortgage bonds were required to deposit their bonds with the coupons with a nominee of the company. The unsecured creditors were required to

file and prove their claims before the referee and assign their notes and claims to a nominee of the company. The sale, in pursuance of the foregoing plan, was authorized at a meeting of the creditors and the property sold by the trustee, and the sale was confirmed by the referee and subsequently by the court.

The position of the referee is that the fees payable to himself and the trustee are to be based upon the total amount of stock in the corporation issued to the secured and unsecured creditors of the bankrupt. The position of counsel for the trustee at the hearing (who also presented an argument for the referee's contentions) is that the commissions should be based upon the actual property administered in relieving the estate of lien indebtedness amounting to over $1,100,000. For reasons hereinafter stated, the creditors at a meeting duly called authorized payment to the referee of $6,500 and a like amount to the trustee, and the referee thereupon ordered the fees in these amounts to be paid. The American Surety Company, which was surety upon contracts of the bankrupt and having at the time a duly proved and allowed claim of $3,241.96, was the only creditor to vote against the allowance of the fees; creditors approximating 1,000,000 voting in the affirmative. It appears that the surety company has since proved additional claims amounting to approximately $82,000, and has other contingent claims yet to be liquidated. The contention of the American Surety Company is that, inasmuch as the sale was made subject to the lien of the first mortgage for the sum of $75,000, the fees of the referee must be based upon the actual cash disbursed to creditors by the trustee under section 40 of the Bankruptcy Act, and those of the trustee upon the cash disbursed or turned over to any person including lien holders under section 48.

The position of the petitioner, briefly stated, is that, inasmuch as the assets of the company were not converted by the sale, but were sold subject to the lien, the only funds disbursed by the trustee in bankruptcy consist of the balance of $75,000 in excess of the liens, together with such other money as has come into his hands from other sources, and that the sale did not discharge the lien, so that neither actually nor constructively has the amount of the liens passed through the hands of the trustee. The petitioner's position, in the opinion of the court, is not sound because it depends exclusively upon the terms of the order of sale and not upon the entire transaction in which the order of sale had a part in carrying out the proposition of the Coast & Lakes Contracting Corporation, and overlooks the position of the trustee with relation to the administration of the assets of the bankrupt and the distribution of their value to mortgage bondholders and unsecured creditors. Under the organization plan in pursuance of which the sale was made, it is true that the sale was made subject to liens, but the mortgage bondholders were to surrender their bonds and to receive therefor preferred stock and the unsecured creditors to surrender their notes and claims and receive therefor common stock. Thus the stock of the corporation was transferred to the bondholders and to the unsecured creditors in consideration of the transfer of their claims; the corporation in payment of their claims receiving the entire property of the bankrupt

from the trustee as payment of the mortgage indebtedness and the claims of the unsecured creditors, and the lien and unsecured creditors receiving, as representing the value of those assets, in distribution, stock of the corporation. While the lien of the mortgage remained at the time of the sale for the purpose of carrying out the terms of the agreement in pursuance of which the sale was made, the debt of $1,-000,000 upon the mortgage and the amount due upon the coupons, and the claims of the unsecured creditors were paid in stock. Looking at the transaction as a whole, therefore, it is apparent that the entire amount of the lien indebtedness was constructively disbursed by the trustee to the corporation for the bondholders and the unsecured creditors. Varney v. Harlow, 210 Fed. 824, 127 C. C. A. 374, 31 Am. Bankr. Rep. 339; In re Cramond (D. C.) 145 Fed. 966, 17 Am. Bankr. Rep. 22; In re Sanford Co. (D. C.) 126 Fed. 888.

[1] The referee and trustee, therefore, are entitled to have their commissions fixed upon the amount disbursed through the intermediary, the Coast & Lakes Contracting Corporation, by means of shares in its stock in precisely the same manner as though the sale had been made for cash sufficient to pay off the liens, the cash received by the trustee, and distributed to the creditors and used by them for purchase of the stock received by them. So ascertained, the fees would amount to over $11,000 each to the referee and trustee, which is largely in excess of the fees fixed at the creditors' meeting.

[2] A large part of the brief and argument of the petitioner was devoted to criticism of an arrangement made prior to the sale by which the referee and trustee agreed to accept $6,500 each as their fees in order to have the sale consummated in pursuance of the organization plan. It is urged that the referee, being a judicial officer, should not be allowed fees fixed by agreement in advance of sale. It appears, however, that the agreement was to accept less fees than he might have claimed, and that the plan would probably have failed and the value of the property would have been wiped out by foreclosure then pending if the referee or trustee had insisted upon claiming full statutory fees. Congress has seen fit to fix the compensation of referees upon a percentage basis which, in every case, results in the referee primarily fixing his own fee. The referee is no doubt frequently embarrassed by being called upon to fix his own compensation. It goes without saying that he cannot use his position for the purpose of obtaining larger fees than the law allows, neither should a litigant take advantage of the position in which the referee is placed, by impugning, without justification, the motives of a judicial officer of this court with unquestioned reputation for high standards of honor and ethics. That counsel for the American Surety Company had no confidence in his imputations against the referee is indicated by the fact that, although he at one time covertly attempted to attack his qualifications to act as referee in the proceeding upon the same grounds which he now urges against the allowance of fees, he never proceeded with his protest against the qualifications of the referee to act. Both the referee and trustee, in order that the plan of sale, which was afterwards ratified by practically all of the creditors, might be carried through for the benefit of the credi-

tors, relinquished their claims to part of their fees. It appears that the plan under which the sale was had was not made in pursuance of any purpose to increase the fees of either officer. That its purpose was to benefit the creditors is apparent, for it was approved by all present or represented at the creditors' meeting except the petitioner. In allowing a trustee compensation on a commission basis, Congress apparently intended to stimulate that officer to all possible activity in the interest of creditors. Owing to the industry and business acumen of the trustee and his counsel in this case, the general creditors share in the benefit derived from the assets of the company. The bondholders through the trustee in the bankruptcy proceedings carried out their plan to acquire the property without foreclosure. No lien creditor is objecting to the fees ordered to be paid, although the payment will reduce funds which would otherwise go to the corporation as assignee of the claims of general creditors. The petition is dismissed, and the order affirmed.