## In re NEW ENGLAND FISH COMPANY, a/k/a NEFCO, Debtor.

### No. 80–00864.

United States Bankruptcy Court, W.D. Washington.

Nov. 15, 1983.

D. Gordon Willhite, Sax & MacIver, Seattle, Wash., for trustee.

## OPINION ON TRUSTEE'S INTERIM COMPENSATION

SAMUEL J. STEINER, Bankruptcy Judge.

This matter is before the Court on the trustee's fourth application for interim compensation. Section 326(a) of the Bankruptcy Code provides:

In a case under chapter 7 or 11, the court may allow reasonable compensation under section 330 of this title of the trustee for the trustee's services, payable after the trustee renders such services, not to exceed fifteen percent on the first $1,000 or less, six percent on any amount in excess of $1,000 but not in excess of $3,000, three percent on any amount in excess of $3,000 but not in excess of $20,000, two percent on any amount in excess of $20,000 but not in excess of $50,000, and one percent on any amount in excess of $50,000, upon all moneys disbursed or turned over in the case by the trustee to parties in interest, excluding the debtor, but including holders of secured claims.

The issue arises as to what is included in the language "upon all moneys disbursed or turned over in the case by the trustee to parties in interest."

### FACTS

During the course of this Chapter 7 liquidation, the trustee has disbursed $46,084,352 to parties in interest. Most of the funds were realized from the sale of assets. Some sales resulted in the settlement of claims against the estate. Other sales resulted in purchasers assuming claims against the estate. Some of the claims were unliquidated or disputed. The trustee contends that the sums compromised and assumed which total

approximately $7,000,000 should be included in the percentages upon which his maximum compensation is to be computed. Each transaction is summarized as follows:

*Sale Number 1.* The trustee sold domestic and foreign trademarks and other property to Ocean Beauty Alaska, Inc., for $2,405,000. The sale price consisted of a cash payment to the estate of $485,548 and the set-off and cancellation of the purchaser's unliquidated administrative claim against the estate of $1,918,342.

*Sale Number 2.* The trustee sold the estate's two thousand shares of common stock in the Totem Packing Company, Inc., to Whitney-Fidalgo Seafoods, Inc., for $1,257,419.20 with $357,419.20 credited against the purchase price to settle disputed claims which Whitney-Fidalgo and Totem had against the estate. The trustee received $300,000 cash on closing. The balance of $600,000 together with interest is to be paid in two equal installments payable on July 1, 1984, and July 1, 1985.

*Sale Number 3.* The trustee settled the disputed claim of Seward's Seafoods by selling the estate's interest in the Viking Seafoods joint venture to Icicle Seafoods, Inc., for $2,000,000 and the release of the claim. The estate received a net of $343,078.

*Sale Number 4.* The trustee sold the estate's interest in the capital stock of Hilton Seafoods, Inc., to Vern Hayes for $50,000. As additional consideration, Hilton agreed to release and hold the estate harmless from a debt owed to Hilton in the sum of $558,000 and from any indebtedness of the debtor owed to Seattle Trust and Savings Bank which was in the approximate sum of $1,000,000.

*Sale Number 5.* The trustee sold assets to Johnson-Kelliher Fish Company, Inc., for $530,000 cash. As part of the transaction, Johnson-Kelliher assumed lien claims of $69,314 and unsecured claims arising from the debtor's pre-filing operations of approximately $168,000.

*Sale Number 6.* The trustee settled the liquidated claims of Geestesmunder Bank Stock Corporation and of Nefco-Deutsch-land by selling the estate's interest in Nefco-Deutschland to Nefco-Deutschland for $2,109,700 and the release of the claims. The estate received a net of $185,000.

## DISCUSSION

The trustee's position is that his maximum commissions should be based on the value of assets distributed to parties in interest, whether in the form of cash or in some other form, as monies received and disbursed in the process of liquidation. The contention is based on the theory of monies constructively received and disbursed, even though no funds actually passed through the trustee's hands. Under the Bankruptcy Act, there is authority for the trustee's position.

In *In re Toole,* 294 F. 975 (S.D.N.Y.1920), the Court held that the words "or turned over" were sufficient to include property as value received in addition to money actually disbursed or turned over. Other courts have reached a similar result by adopting the theory of monies constructively received and disbursed. In *In re Sanford Furniture Mfg. Co.,* 126 F. 888 (E.D.N.C.1903), the Court held that where property is subject to liens and is sold free and clear to a party holding the liens, the trustee is entitled to commissions based on the purchase price in full. *See also In re Morse Iron Works & Dry Dock Co.,* 154 F. 214 (E.D.N.Y.1906); *In re Lowell Textile Co.,* 288 F. 989 (D.Mass.1923); and *In re Prindible,* 115 F.2d 21 (3rd Cir.1940). The basis for the theory is to insure to trustees compensation commensurate with their services, particularly when the estate's administration is complex and the estate benefits from the services. 2 *Collier on Bankruptcy,* Section 326.01 (15th Ed.).

Although some courts have allowed compensation based upon the constructive proceeds of encumbered property sold free and clear of liens, those same courts have denied compensation when the property was sold subject to liens. *American Surety Co. v. Freed,* 224 F. 333 (3rd Cir.1915), re'g *In re Breakwater Co.,* 220 F. 226 (E.D.Pa.1915). Under these rulings, it is clear that even if

this Court were to adopt the theory of monies constructively received and disbursed, the claim of the trustee for compensation on Sale Number 5 (sale of assets to Johnson-Kelliher) would have to be denied as to the value of the claims assumed, allowing only the cash received by the estate to be included in the percentages which are the basis of the trustee's compensation.

However, the result of still other cases is in direct contrast to the above-cited opinions. In *In re Morris Bros.,* 8 F.2d 629 (D.Ore.1925), the issues involved the computation of the Referee's commission. The Court acknowledged the holding of *In re Toole, supra,* but based its ruling on the plain and unambiguous meaning of the Act and held that commissions are to be computed on monies disbursed to creditors, not on property turned over. *See also In re Brigantine Beach Hotel Corp.,* 197 F.2d 296 (3rd Cir.1952), *cert. denied,* 344 U.S. 832, 73 S.Ct. 39, 97 L.Ed. 647 (1952) (the word "money" in the Act is not the equivalent of property); and *In re Orbitronics, Inc.,* 254 F.Supp. 400 (E.D.Wis.1966) (fees and allowances of trustee are allowable only as authorized by the Act).

Other pertinent cases are *In re Wallace,* 14 F.2d 534 (E.D.Okl.1926) (trustee entitled to commissions based upon all monies disbursed by him, including administrative expenses); *In re New York Commercial Co.,* 231 F. 445 (C.C.A.1916) (trustee entitled to commissions only on a $50,000 profit, though volume of business was about $900,-000); and *In re Kaiser,* 112 F. 955 (D.Mont. 1902) (trustee not entitled to commissions on the consideration of a compromise between the creditors and a third party because such consideration had never come into the trustee's possession and had not been disbursed by him).

The latter position is supported by whatever can be gleaned from the legislative history and the clear meaning of the language of the present statute. Section 326(a) of the Code is derived in part from Section 48(c) of the Act. Both sections base a trustee's compensation "upon all *moneys* disbursed or turned over" to persons. The Senate and House stated in their respective committee reports on Section 326(a) of the Code that:

> (i)t should be noted that the base on which the maximum fee is computed includes *moneys* turned over to secured creditors, to cover the situation where the trustee *liquidates* property subject to a lien and *distributes the proceeds.* It does *not* cover cases in which the trustee simply turns over the property to the secured creditor, nor where the trustee abandons the property and the secured creditor is permitted to foreclose.

S.Rep. No. 95–989, 95th Cong., 2d Sess. 37–38 (1978); H.R.Rep. No. 95–595, 95th Cong., 1st Sess. 327 (1977), U.S.Code Cong. & Admin.News 1978, pp. 5787, 5824, 6283–6284 (emphasis added).

When Congress enacted section 326(a) of the Code, it modified section 48(c) of the Act in two respects: It deleted the minimum fee provision of $150, and it altered the base upon which maximum commissions are to be computed. When Congress made these changes, it presumably was aware of the difference of opinion which existed under prior law and which leads to the problem in this case. Had it so desired, Congress could readily have included properties turned over, assumed claims, and the value of compromised claims as well as monies as the basis on which commissions were to be computed. However, it did not do so. It is a well established principle of statutory interpretation that unambiguous words should be given their plain and ordinary meaning, unless to do so would be dissonant with the purpose of the statute. 73 Am. Jur.2d *Statutes,* Section 159 (1974).

■ In the interpretation of statutes, the legislative intent is the controlling factor. When the meaning of the law is evident, to go elsewhere in search of conjecture in order to restrict or extend the act would be an attempt to elude it, which, if once permitted, would be extremely dangerous, since there would be no law, however definite and precise in its language, which might not be rendered useless by interpre-

tation. *In re Boggs-Rice Co.,* 66 F.2d 855 (4th Cir.1933).

There is no doubt that the administration of this estate has presented issues of the utmost complexity, and that the trustee has rendered extraordinary services to the estate and to the creditors which have included the selling of assets for sums in excess of appraised values not only in a declining economy but also in a particularly troubled industry. The trustee is to be commended for having done an outstanding job.

 However, in view of the majority of the cases under prior law and the plain and unambiguous wording of section 326(a), this Court concludes that the trustee's compensation must be based on actual monies disbursed to parties in interest, and not on assets or settlements which can be construed as a constructive disbursement. If Congress had intended anything more, it would have said so. It is not within the province of this Court to depart from or enlarge upon the specific wording of the statute. Even though this may be a case where the trustee's efforts deserve compensation in excess of the maximum allowable under the law, the solution is not with the Court but with Congress.

It should also be noted as to Sale Number 2 that $600,000 of the sale price has not as yet been received. It is difficult to imagine how the $600,000 not yet received by the estate can be included within monies disbursed by the trustee.

A further problem is presented because some of the claims settled in the process of the sales were disputed or unliquidated. If such claims were to be allowed as part of the basis upon which the trustee's commissions are to be computed, first and at a minimum, a hearing would have to be held to determine the estate's liability on the claims and/or to liquidate them. Such a procedure could be lengthy, costly, and of doubtful economic value to the estate.

## CONCLUSION

The Court concludes that the trustee's commissions can only be based upon actual monies disbursed or turned over by the trustee to third parties.

Counsel for the trustee will prepare and present an order allowing the trustee's application for interim compensation which will be computed on the basis of the $46,-084,352 which has to date been disbursed to parties in interest.

This opinion will serve as the Court's Findings of Fact and Conclusions of Law.