Revised September 16, 1998

IN THE UNITED STATES COURT OF APPEALS

FOR THE FIFTH CIRCUIT
_____

No. 97-10378
_____

In The Matter Of:  CHARLES ENGLAND,

                          Debtor.

--------------------

J GREGG PRITCHARD,

                          Appellee,

     v.

US TRUSTEE,

                          Appellant,

     v.

PALMER & PALMER, PC,

                          Appellant.

-----------------------------------------------

In The Matter Of:  WESLEY R ENGLAND,

                          Debtor.

--------------------

J GREGG PRITCHARD, Trustee,

                          Appellee,

     v.

US TRUSTEE,

                          Appellant,

v.

PALMER & PALMER, PC,

Appellant.

_____

Appeals from the United States District Court
for the Northern District of Texas
_____

August 28, 1998
Before KING and DAVIS, Circuit Judges, and HEARTFIELD,[*] District
Judge.

KING, Circuit Judge:

Appellants, the United States Trustee and Palmer & Palmer,
P.C. appeal the district court's judgment reversing the
bankruptcy court's judgment which limited bankruptcy trustee
J. Gregg Pritchard's compensation for administering the debtors
estates.  We reverse the district court's judgment.

## I.  BACKGROUND

Trustee-appellee J. Gregg Pritchard (the Trustee) served as
the bankruptcy trustee in the Chapter 7 liquidations of the
jointly administered estates of two brothers, debtors Charles
England and Wesley R. England.  Real estate provided the bulk of
the assets for both estates, and some of the properties were
owned jointly by the debtors.  The Trustee successfully sold some
of the properties, but the other properties proved more difficult
to sell.  To avoid delay in closing the estates and with only six
unsecured creditors left to be paid, the creditors and the

_____

[*]  District Judge of the Eastern District of Texas, sitting
by designation.

2

Trustee entered into an agreement to transfer the unsold real estate and other property to two of the creditors in full satisfaction of their claims and to pay the other four creditors in full. This settlement, including the transfer of property, was approved by the bankruptcy court without any objection from a party-in-interest.

The Trustee then sought $89,359.99 in compensation from the estates. The bankruptcy court reduced the Trustee's compensation to $38,009.30 based upon 11 U.S.C. § 326(a), which caps a Chapter 7 trustee's compensation based upon a percentage of the moneys disbursed. The Trustee appealed the bankruptcy court's compensation decision to the district court, which reversed the decision and ruled that the Trustee's maximum compensation would be based upon the moneys and property disbursed. The United States Trustee (the U.S. Trustee) and Palmer & Palmer, P.C. (Palmer), the debtors' counsel, appeal.[1]

## II.  STANDARD OF REVIEW

This case presents only a question of statutory interpretation, which is a question of law reviewed de novo. See Bruner v. United States (In re Bruner), 55 F.3d 195, 197 (5th Cir. 1995).

---

[1]  The Trustee suggests that Palmer is not a proper appellant. We need not reach this question because the United States Trustee is undoubtedly a proper party and is requesting the identical relief, and therefore we may entertain this appeal even without Palmer.

3

## III. DISCUSSION

Section 330 of the Bankruptcy Code provides authority for the bankruptcy court to award the bankruptcy trustee "reasonable compensation for actual, necessary services rendered by such trustee." See 11 U.S.C. § 330(a)(1).[2] Under § 330, the bankruptcy court may award less compensation than requested, and the section sets out relevant factors to consider in determining reasonable compensation. See id.;[3] 3 COLLIER ON BANKRUPTCY § 330.02[1][c][i] (Lawrence P. King ed., 15th ed. rev. 1998). However, § 326 of the Bankruptcy Code limits the bankruptcy court's power to award compensation to the trustee by setting a maximum limit on the trustee's compensation. Section 326(a)

---

[2] The relevant portions of §§ 330 and 326 were both amended in 1994. See Bankruptcy Reform Act of 1994, Pub. L. No. 103-394, §§ 107, 224, 108 Stat. 4106, 4111, 4130-31. Those amendments do not apply to this bankruptcy proceeding because it was filed before their effective date. See id. § 702, 108 Stat. 4150. Therefore, all references, unless otherwise noted, are to the previous versions of §§ 326 and 330 applicable in this case.

[3] Section 330 provides:

   (a) After notice to any parties in interest and to the United States trustee and a hearing, and subject to sections 326, 328, and 329 of this title, the court may award to a trustee . . . --
        (1) reasonable compensation for actual, necessary services rendered by such trustee . . . based on the nature, the extent, and the value of such services, the time spent on such services, and the cost of comparable services other than in a case under this title; and
        (2) reimbursement for actual, necessary expenses.

11 U.S.C. § 330.

4

provides that

> [i]n a case under chapter 7 or 11, the court may allow reasonable compensation under section 330 of this title of the trustee for the trustee's services, payable after the trustee renders such services, not to exceed [decreasing percentages of increasing dollar amounts], upon all moneys disbursed or turned over in the case by the trustee to parties in interest, excluding the debtor, but including holders of secured claims.

Id. § 326(a) (emphasis added).  The proper outcome of this appeal turns upon whether "moneys disbursed" as used in § 326(a) includes the disbursement of unliquidated property from the estate.

Before interpreting the statute, we must first address the Trustee's argument that the law of the case controls the outcome of this case.  Under the law-of-the-case doctrine, a court follows its prior final decisions in the case as the law of that case, except for a few narrow exceptions.  See Alberti v. Klevenhagen, 46 F.3d 1347, 1351 n.1 (5th Cir. 1995).  The doctrine encompasses those decisions "'decided by necessary implication as well as those decided explicitly.'"  Id. (citing Dickinson v. Auto Ctr. Mfg. Co., 733 F.2d 1092, 1098 (5th Cir. 1983)).  The Trustee argues that the bankruptcy court determined that the definition of "money" includes property when it approved the transfer of the property to the unsecured creditors in full satisfaction of their claims.  He bases his argument upon the trustee's duty to reduce the property of the estate to money under 11 U.S.C. § 704(1), contending that, in order to approve

5

the transfer, the bankruptcy court necessarily had to decide that money included property or else the court could not have approved the transfer.  However, the bankruptcy court made no such determination, either implicitly or explicitly; the court was simply presented with a method, urged by the Trustee and the creditors, to satisfy all of the remaining creditors' claims in full while avoiding the delay of waiting for the sale of the remaining properties.  No one objected to the transfer of property to satisfy the remaining claims against the estates, and the bankruptcy court approved the transfer without making any decision as to the meaning of "money" under the Bankruptcy Code.

We return, then, to our statutory inquiry.  To determine the meaning of a statute, a court must begin with the plain meaning of its language.  See United States v. Ron Pair Enters., 489 U.S. 235, 241 (1989).  "Courts properly assume, absent sufficient indication to the contrary, that Congress intends the words in its enactments to carry 'their ordinary, contemporary, common meaning.'"  Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd. Partnership, 507 U.S. 380, 388 (1993) (quoting Perrin v. United States, 444 U.S. 37, 42 (1979)). Because the Bankruptcy Code does not define "moneys" (or "money"), we must rely upon the word's common everyday meaning, which does not include property.  See WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 1458 (Philip Babcock Gove ed., 1963) (defining "money" as "something generally accepted as a medium of exchange, a measure of value, or a means of

payment"); BLACK'S LAW DICTIONARY 1005 (6th ed. 1990) (defining "money" as "coins and paper currency used as circulating medium of exchange, and does not embrace notes, bonds, evidences of debt, or other personal or real estate"). The plain language of § 326(a) indicates that the statute caps a trustee's compensation based upon only the moneys disbursed, without any allowance for the property disbursed. See In re Barnett, 133 B.R. 487, 489-90 (Bankr. N.D. Iowa 1991) (relying upon the plain language of the statute to hold that property disbursements could not increase the maximum compensation); In re New England Fish Co., 34 B.R. 899, 901-02 (Bankr. W.D. Wash. 1983) (same); see also In re Brigantine Beach Hotel Corp., 197 F.2d 296, 299 (3d Cir. 1952) (interpreting the same language in the Bankruptcy Act of 1898 and finding that "moneys" is not the equivalent of property); In re North Am. Oil & Gas, Inc., 130 B.R. 473, 480-81 (Bankr. W.D. Tex. 1990) (finding unliquidated assets turned over did not increase the trustee's maximum compensation). But see In re Toole, 294 F. 975, 977 (S.D.N.Y. 1920) (interpreting the same language in the Bankruptcy Act of 1898 and finding "moneys disbursed or turned over" broad enough to encompass securities disbursed).

The Trustee argues that the plain meaning of money should not be used in interpreting § 326(a) because to do so conflicts with fundamental policies of the Bankruptcy Code, including prompt administration of the bankruptcy estate and maximization

7

of the payments to creditors.[4]  See 11 U.S.C. § 704(1) (including among the duties of the trustee the duty to "collect and reduce to money the property of the estate for which such trustee serves, and close such estate as expeditiously as is compatible with the best interests of parties in interest").  According to the Trustee, these policies support his decision to transfer the property to the unsecured creditors, and the conflicts with these policies that a plain language interpretation of § 326(a) creates are "'demonstrably at odds with the intentions of [the statute's] drafters,'" requiring courts to give controlling effect to their intentions over the statute's plain meaning.[5]  See Ron Pair Enters., 489 U.S. at 242 (quoting Griffin v. Oceanic Contractors, Inc., 458 U.S. 564, 571 (1982)).

Restated, the Trustee's argument is that, by excluding property distributions from the calculation of his maximum compensation, the plain meaning of § 326(a) creates an incentive

---

[4]  The Trustee also argues that the term "money," as used in the Bankruptcy Code, does not have a plain meaning that excludes property because, in approving the transfer of the property to satisfy creditors' claims, the bankruptcy court interpreted "money" to include property.  This argument fails for the same reasons as the Trustee's law-of-the-case argument discussed above in the text: the bankruptcy court's approval of the transfer of the property in no sense carried with it an explicit or implicit determination of what constituted "money."

[5]  In this case, we are concerned only with the interpretation of 11 U.S.C. § 326(a) and do not express any opinion as to the propriety of the Trustee's transfer of the property to the unsecured creditors as a method of settling the debtors' estates under the Bankruptcy Code.

for a trustee to liquidate assets even though that action may not be in the best interest of the estate. However, § 330, not § 326(a), provides authorization for compensating the trustee and sets the standards for that compensation, and it allows a bankruptcy court to award a lesser amount of compensation when the trustee has manipulated the handling of an estate to increase his maximum compensation to the detriment of the estate. See 11 U.S.C. § 330(a)(1)-(2) (authorizing reasonable compensation only for "actual necessary services" and "actual necessary, expenses"); In re Prairie Cent. Ry., 87 B.R. 952, 957 (Bankr. N.D. Ill. 1988); see also Southwestern Media, Inc. v. Rau, 708 F.2d 419, 424 (9th Cir. 1983) (interpreting 11 U.S.C. § 326(a)'s substantially similar predecessor in the Bankruptcy Act of 1898). Section 326(a)'s intended role within the Bankruptcy Code is simply to set a maximum limit on the trustee's compensation. See S. REP. NO. 95-989, at 37 (1978), reprinted in 1978 U.S.C.C.A.N. 5787, 5823; H.R. REP. NO. 95-595, at 327 (1977), reprinted in 1978 U.S.C.C.A.N. 5963, 6283;[6] see also 11 U.S.C. § 326 (entitled

---

[6] The Senate and House Reports read identically in relation to § 326 and its intended purpose as an upper limit on trustee compensation:

> It must be emphasized that this section does not authorize compensation of trustees. This section simply fixes the maximum compensation of a trustee. Proposed 11 U.S.C. 330 authorizes and fixes the standard of compensation. Under section 48c of current law, the maximum limits have tended to become minimums in many cases. This section is not intended to be so interpreted. The limits in this section, together with

"Limitation on compensation of trustee"); <u>Southwestern Media</u>, 708 F.2d at 424; <u>Prairie Cent. Ry.</u>, 87 B.R. at 957. Therefore, a trustee who manipulates a bankruptcy estate to increase his maximum compensation risks being denied compensation regardless of what the maximum compensation may be under § 326(a) because the compensation is unreasonable in light of the trustee's manipulations. <u>See</u> <u>Southwestern Media</u>, 708 F.2d at 425; <u>Prairie Cent. Ry.</u>, 87 B.R. at 957.

The policy concerns raised by the Trustee do not demonstrate that using the plain meaning of "moneys disbursed" in interpreting § 326(a), especially in light of § 330's role in setting compensation, is at odds with Congress's intent. <u>See</u> <u>Barnett</u>, 133 B.R. at 489-90. The section is consistent with the duty of a Chapter 7 trustee to collect and reduce the property of the bankrupt's estate to money. <u>See</u> 11 U.S.C. § 704(1). Additionally, § 326(a) does not in itself prohibit the court, in setting the trustee's compensation under § 330, from taking into account the services that the trustee rendered in arranging for the property distribution in settlement of claims, but merely

---

> the limitations found in section 330, are to be applied as outer limits, and not as grants or entitlements to the maximum fees specified.

S. REP. NO. 95-989, at 37 (1978), <u>reprinted in</u> 1978 U.S.C.C.A.N. 5787, 5823; H.R. REP. NO. 95-595, at 327 (1977), <u>reprinted in</u> 1978 U.S.C.C.A.N. 5963, 6283.

sets an upper limit on the trustee's compensation from the estate.  See 11 U.S.C. §§ 326(a), 330.  Congress's decision to set a maximum limit on trustee compensation based only upon moneys disbursed may arguably lead to a trustee receiving inadequate compensation in a particular case, but that is a problem for Congress to remedy.  See Barnett, 133 B.R. at 490.

We recognize that, despite the plain meaning of § 326(a), some bankruptcy courts have interpreted the section to include disbursements other than money within the calculation of a trustee's maximum compensation.  See In re Greenley Energy Holdings of Pa., Inc., 102 B.R. 400 (E.D. Pa. 1989) (including guaranteed contracts in the calculation of maximum compensation where the trustee actually sought out and entered the contracts for the estate); In re Toole, 294 F. 975 (S.D.N.Y. 1920) (interpreting the same language in the Bankruptcy Act of 1898 to include securities disbursed in a difficult bankruptcy); In re Stanley, 120 B.R. 409 (Bankr. E.D. Tex. 1990) (including liens on property that remained in force on the property after sale in the calculation of maximum compensation); see also North Am. Oil & Gas, 130 B.R. at 480 n.15 (relying upon Greenley Energy for the idea that the rare case may present a situation where property distributions which can be readily valued are includable in determining the trustee's maximum compensation).  We simply disagree that the plain language of § 326(a) permits a different result from that reached by the bankruptcy court in this case.

11

## IV.  CONCLUSION

For the foregoing reasons, we REVERSE the district court's judgment and REMAND the case for further proceedings consistent with this opinion.