In re TOOLE et al.

(District Court, S. D. New York. March 18, 1920.)

1. Bankruptcy ⬤⟞474—Commissions to trustees and receivers allowable on property reclaimed.

Under Bankruptcy Act, § 48, as amended (Comp. St. § 9632), allowing commissions to trustees and receivers on "all moneys disbursed or turned over to any person, including lienholders," such commissions are not limited to the general estate of the bankrupt, but may be computed on property turned over to the holder of an equitable lien, or reclaimed under an equitable title, where such property was not kept separate from bankrupt's general estate.

2. Bankruptcy ⬤⟞474—General estate is chargeable with commissions on property reclaimed.

Where property of third persons has wrongfully been mingled by bankrupt with his own, and is reclaimed by the owner after bankruptcy, the commissions of the receiver or trustee with respect to the property thus turned over are properly chargeable to the general estate.

In Bankruptcy. In the matter of Charles B. Toole and Douglas Henry, individually and as copartners as Toole, Henry & Co., bankrupts. On settlement of receiver's accounts.

⬤⟞For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

Zalkin & Cohen, of New York City, for receiver.
Kremer & Leavitt, of New York City, for certain creditors.

AUGUSTUS N. HAND, District Judge. [1] This is an application to settle the account of the receiver and fix the compensation of the receiver, his counsel, the accountants, and the attorney for the petitioning creditors. The case arises from the failure of a firm of stockbrokers, and involves the most difficult and intricate questions of tracing moneys and securities and of marshaling assets. The administration of such estates requires great industry, capacity for detail, and unusual expenditure of time and energy. To deal with them satisfactorily demands an experienced and able receiver and counsel. It is usually the case that the amounts available for general creditors are far less than the moneys or securities which are successfully reclaimed by third parties, and often they are negligible in amount as compared with the so-called reclamation claims. If no compensation can be awarded, except commissions which may be calculated upon the general estate, it is literally true that no competent person would wisely accept the office of receiver or trustee of such an estate.

Undoubtedly these considerations cannot furnish a reason for awarding commissions, if the statute forbids. They do, however, afford a most persuasive reason for supposing that the amendments to section 48 of the Bankruptcy Act should be treated as so enlarging the scope of the act as to allow compensation to trustees and receivers for all property properly administered by the bankruptcy court, irrespective of whether it turns out to belong to the general estate or not. The original act, before the amendment of 1903 (30 Stat. 557), allowed commissions only to be reckoned on "sums to be paid as dividends and commissions." The act, as amended in 1903 (32 Stat. 799), allowed commissions "on all moneys disbursed," and in 1910 (36 Stat. 840 [Comp. St. § 9632]) "on all moneys disbursed *or turned over to any person, including lienholders.*"

This is a very broad provision. To treat it as relating only to property belonging to the general estate seems to me either to disregard the words "or turned over to any person, including lienholders," or to give them an unnecessarily and undesirably restricted meaning. Moreover, the word "lienholders," even if intended to define the only persons on whose moneys the amount of commissions may be calculated, other than those sharing in the general estate, is a widely inclusive term. In many cases, where assets have to be marshaled, it is difficult and often practically unimportant to determine whether a claimant has an equitable title or an equitable lien. Can it be that the right to compensation depends on such a technical consideration as to where the equitable title is found to be?

The statute uses the sweeping clause "turned over to any person, including lienholders." The last-named class, though conceivably broad enough to cover many so-called reclamation creditors in a stockbrokerage bankruptcy, is only designated as a part of a much wider class described as "any person." If "any person" only means any person who is properly paid out of the general estate, those words added by the

amendment of 1910 effected no change, for the commissions awarded by the amendment of 1903 on "all moneys disbursed" completely covered the ground. The words "including lienholders" were, as I view it, added to the words "any person" ex abundante cautela, and are not restrictive. I think it also reasonable to suppose that the words *"or turned over"* are sufficient to include property at the value received, as well as "moneys disbursed."

I do not mean to say that a receiver or trustee should be allowed commissions calculated upon the amount of funds or securities held by a bankrupt as executor, trustee, or agent, where they are clearly kept separate from his general estate, but where they are not earmarked or separated, I can see no reason why the court should not allow proper compensation within the statutory limits for the trustee's labor in ascertaining, through legal proceedings or otherwise, the ownership of the property, and in turning it over to the persons to whom it belongs. Such I understand to have been the situation in the present case.

For the reasons I have given, I agree with the referee that commissions ought to be calculated upon cash, as well as upon the securities already turned over to claimants under orders of this court; that is to say, upon $263,634.09. The commissions heretofore allowed upon moneys involved in the Studebaker claim should be charged to the receiver against the amount now awarded. He will be entitled to commissions on the remaining securities when administered by the trustee. The amount which may be realized upon them in cash or otherwise cannot now be determined.

[2] In respect to the suggestion that a part of the expenses should be charged against the funds and securities involved in the omnibus proceedings, because the receiver has performed labor in disentangling them, there is much to be said for this in cases where the receiver has made no claim to the securities or cash for the general estate, and has only worked to conserve them and to see that they are turned over to the proper person. Judge Mayer, in Matter of Wilson (D. C.) 252 Fed. 631, allowed a portion of the accountants' charges to be paid out of the reclamation funds and refused to allow any other expenses to be so paid.

It may be doubted whether even a portion of the accountants' bill should be thus charged, where there is a general estate to meet these fees. The general creditors ought to stand in no better position than the bankrupt, and it is hard to see how the general estate can be relieved of the burden of paying expenses which are due to his wrong. The whole matter is difficult, and, while not free from doubt, has in general been resolved in favor of the lienholder and against the general estate. Gillespie v. J. C. Piles & Co., 178 Fed. 886, 102 C. C. A. 120, 44 L. R. A. (N. S.) 1; In re Anders Push Button Telephone Co. (D. C.) 136 Fed. 995; In re Pierson (D. C.) 225 Fed. 893; Matter of Wilson, supra. A still later discussion of the foregoing question, to which I have been referred, is that of Judge Learned Hand in an unreported opinion in the Matter of Kessler, dated July 16, 1918, where he awarded commissions calculated upon funds and securities held to

294 F.—62

belong to third parties, but directed that they be paid wholly out of the general estate.

Under the circumstances, I have decided to direct that all the allowances be paid from the general estate. The ultimate incidence of the compensation awarded to the accountants may be reserved for future consideration at the time of the settlement of the accounts of the trustee, or such other occasion as may be appropriate. If it is desired to review the order to be entered on this decision, for the purpose of having a part of the commissions of the receiver and the compensation of his counsel charged against securities or cash involved in the omnibus proceeding, pending an appeal a sufficient amount of the properties involved in the omnibus proceeding may be withheld to indemnify the general estate in case the Circuit Court of Appeals should differ with the views I have expressed.

The application of the solicitors for the receiver for a sum in excess of double the receiver's allowance is, because of our local rule, premature, though they have unquestionably performed services of a value much in excess of such sum. They are awarded for the present on account of services double the amount allowed the receiver, and in making up this amount are charged with the compensation they have already been allowed by consent in respect to the Studebaker claim.

The other allowances of the referee, including the disbursements and the compensation of the accountants, are in all respects affirmed. The accountants have performed a difficult and valuable service with general satisfaction. In spite of the fact that the amount awarded to them by the referee is somewhat below their schedule of fees, it is sufficient to afford excellent compensation for their work above all carrying charges, and, like the claim of the solicitor for a receiver or trustee, must be subject to the estimate of the bankruptcy court as to what is reasonable under existing circumstances. The referee is thoroughly versed in matters of this kind, and I find no reason to differ from the sound judgment of a man of his long experience.