### In re LEHRENKRAUSS et al.
### No. 25564.

District Court, E. D. New York.
Oct. 27, 1936.

Archibald Palmer, of New York City, for trustees in bankruptcy.

BYERS, District Judge.

The referee's report discusses the difficulty presented in making an award to the trustees in bankruptcy for services in administering the complex properties, assets, and holdings of these bankrupts.

The item of $30,315.34, being the difference between the amount claimed by the trustees and that awarded to them by the referee, is the only subject calling for discussion.

The bankrupts, prior to the filing of the petition, had sold certificates of participation in a large number of mortgages owned

by them, and containing their guarantee of payment, to sundry holders; the sum of $1,515,812.75 represents the face value of such mortgages; during administration these were severally assigned by the trustees to corporations organized by the various groups of certificate holders, in consideration of the withdrawal of claims filed with the referee, under the guarantees.

Ultimately it is to be expected that, as to each corporation, the certificate holders will exchange their mortgage certificates for stock in the corporation holding the mortgage.

This procedure was adopted to avoid foreclosure in a depressed real estate market, to the end that the certificate holders may eventually receive whatever benefit is to accrue from their interests as stockholders in the property held by the respective corporations.

The trustees claim that this disposition of the mortgages by them constitutes "moneys disbursed or turned over to any person, including lien holders * * *" within the meaning of section 48 of the Bankruptcy Act, as amended, 11 U.S.C.A. § 76.

Such a construction of the law would accomplish a presently desirable end, for these trustees have labored diligently, patiently and thoroughly to administer an intricate estate in bankruptcy, and the nature and extent of their labors must commend these gentlemen to the creditors as well as to the court.

There was but one creditor voicing objection to the granting of the petition as filed. The referee however was required to decide the matter quite apart from the attitude of creditors, and the discussion of the subject in his report is indicative of the study which underlies his conclusion.

The trustees rely upon In re Columbia Cotton Oil & Provision Corporation (C.C.A.) 210 F. 824, and In re Toole (D.C.) 294 F. 975, 977, to support their contention.

Before referring to these cases, it is necessary to observe that the trustees' computation necessarily assigns to the mortgages, the total value between April 4, 1936, and July 28, 1936, of $1,515,812.73, if the trustees' seventh intermediate account, Schedules A and 13 are understood.

In theory, it is possible that these values could be shown, but there is no evidence in the papers under examination so to indicate.

If these mortgages had been marketable, such as the securities presumably involved in the Toole Case, or if there had been a sale of the mortgages at less than the appraised value, but at a definite sum fixed by the court, as in the Columbia Cotton Oil Case, there would have been a basis in dollars upon which to calculate the commissions, but there is none. It is sought to assign to a miscellaneous collection of mortgages a composite value equal to the face value of all the instruments, and there is nothing to support that valuation.

It would be flying in the face of common knowledge to assume that these mortgages could have been sold for anything like the figures recited in them, and for failure of demonstration on this subject, it is not perceived how the trustees can prevail.

It cannot be said that the Toole Case was affected by In re Allied Owners Corporation (C.C.A.) 79 F.(2d) 187. The court was careful to point out that the same question was not involved, thus the opinion at page 190 of 79 F.(2d): "But neither of these decisions [the Toole and Kessler Cases] was made upon facts like the present, and, if sound, each is limited to cases where it can be said that there is a constructive disbursement of moneys by turning over property *at an agreed valuation.*" (Italics supplied.)

Nothing is known by this court, concerning the Kessler Case, but in the Toole Case, which involved the turning over of securities to claimants in reclamation against a bankrupt stock broker, the court awarded commissions to a receiver upon such securities, using this language in referring to section 48 of the Bankruptcy Act: "I think it also reasonable to suppose that the words 'or turned over' are sufficient to include property *at the value received,* as well as 'moneys disbursed.'" (Italics supplied.)

This seems to be the important defect in the showing made by the petitioning trustees.

The difference between assigning the various mortgages directly to the certificate holders and taking their receipt in full for all claims, and what was actually done, seems not to be controlling.

If in appropriate circumstances, the transfer of property may be regarded as the equivalent of turning over money, and reason seems to favor such a construction of the act, the method adopted would seem to be relatively unimportant.

However, the requirement of equivalence cannot be met, in the absence of proof of the value of the property transferred. In this case, it cannot be stated in terms of the consideration paid, which was the surrender of claims filed with a referee in bankruptcy, the value of such claims not having been disclosed.

If the trustees desire to supplement their petition in the respect indicated, the matter will be referred back to the referee to take testimony and report. If not, the report will be confirmed with regret that the statute must be so construed, in this case, as not to provide adequate compensation to these trustees.

The trustees will submit an order in accordance with the foregoing, confirming the report as to the appraisers' fees.