**In re Douglas R. COLBURN, Debtor.**

**In re Alan D. Macklin Brenda J. Lindsey–Macklin, Debtors.**

**Bankruptcy Nos. 398–32210–rld13, 398–33273–rld13.**

United States Bankruptcy Court, D. Oregon.

March 22, 1999.

M. Caroline Cantrell, Portland, OR, for Colburn and Macklin, Debtors.

Thomas M. Renn, Beaverton, OR, for Chapter 7 Trustee.

David B. Mills, Eugene, OR, for Michael J. Grassmueck.

Michael J. Caro, Portland, OR, for Creditor, Sydney Nilsen.

Pamela J. Griffith, Office of the U.S. Trustee, Portland, OR, for U.S. Trustee.

Daniel F. Vidas, Dunn, Carney, Allen, Higgins & Tongue, Portland, OR, for Chapter 7 Trustee.

John Mitchell, Inc., Portland, OR, pro se.

## MEMORANDUM OPINION

RANDALL L. DUNN, Bankruptcy Judge.

These Chapter 13 cases are before me on objections to the proofs of claims filed by the former Chapter 7 trustees, and trustee's counsel in the *Colburn* case. I have consolidated these cases for purposes of this Memorandum Opinion only, because they present a common issue for my decision.

Following the hearings held in the *Colburn* case on March 4, 1999, and the *Macklin* case on March 8, 1999, I have reviewed my notes, the parties' submissions and relevant legal authority. The findings that I set forth in this Memorandum Opinion are designated as the court's findings under Fed.R.Civ.P. 52(a),

applicable in this contested matter under Fed. R. Bankr.P. 9014.

### Facts

*In re Douglas R. Colburn*, Case No. 398–32210–rld13. Douglas R. Colburn ("Colburn") filed a voluntary Chapter 7 "no asset" petition on March 27, 1998. Michael A. Grassmueck, Inc. ("Grassmueck") was the duly appointed Chapter 7 trustee. Grassmueck objected to Colburn's claim for a wage exemption on the basis that Colburn had testified at the § 341(a)[1] Meeting of Creditors that the "wages" were actually accounts receivable from Colburn's janitorial business. Grassmueck also sought a court order requiring that Colburn turn over to the trustee the sum of $2,600, which represented the proceeds of accounts receivable from the business. Colburn timely requested a hearing on the objection to exemption and the request for a turnover order. After the parties had fully briefed the issue of whether the funds Grassmueck sought were exempt wages as opposed to accounts receivable, but before the hearing scheduled to resolve the issue, the court entered an order on Colburn's motion to convert the case to a case under Chapter 13. Grassmueck asserts a right to compensation for having, through investigation, "found" an asset of the estate valued at $2,600.

At the same time Grassmueck was challenging Colburn's wage exemption, Sydney Nilsen ("Nilsen") was prosecuting a non-dischargeability and quiet title adversary proceeding against Colburn. Nilsen, Colburn's former mother-in-law, alleged that Colburn incurred $15,000 of debt on Nilsen's credit cards and encouraged Nilsen to transfer an interest in her home so that he could obtain a loan for their mutual benefit. The loan, in the amount of $75,000, was secured by Nilsen's home. The loan proceeds were used as follows: $30,000 to pay Colburn's debts, $15,000 to pay the credit card obligations Colburn had incurred on Nilsen's cards, $20,000 to pay off a vehicle loan for a third party (Colburn was a co-signor on the loan), and loan origination fees in an undisclosed amount. Nilsen sought to have Colburn's

interest in her home rescinded based upon allegations of fraud. Colburn had not listed an interest in Nilsen's home in his schedules. Grassmueck obtained court approval to hire Thomas Renn ("Renn") to represent him in seeking to recover approximately $11,000 for the estate based upon Colburn's interest in Nilsen's home.

Following the conversion to Chapter 13, Grassmueck filed a Final Report in the Chapter 7 case stating that he had neither collected nor disbursed funds. The report claims a commission in the amount of $3,469.95 and expenses of $56.66, and Grassmueck filed an Application for Chapter 7 Professional Compensation (Claim No. 2) in Colburn's Chapter 13 case, seeking payment of these sums as an administrative expense. The commission amount is the maximum commission set forth in 11 U.S.C. § 326(a) based on distributions totaling $13,600, the amount Grassmueck asserts would have been distributed to creditors from the Chapter 7 estate. Both Colburn and Nilsen objected to Claim No. 2.

Renn also filed an Application for Chapter 7 Professional Compensation (Claim No. 9) seeking payment of $1,225.00 (representing 9.8 hours of services at $125.00/hr), for professional services performed, as an administrative expense. Nilsen objected to Claim No. 9.

The parties briefed the issues, and argument on the objections was heard March 4, 1999.

*In re Alan D. Macklin and Brenda J. Lindsey–Macklin*, Case No. 398–33273–rld13. Alan D. Macklin and Brenda J. Lindsey–Macklin (the "Macklins") filed a voluntary Chapter 7 "no asset" petition on May 1, 1998. John Mitchell ("Mitchell") was the duly appointed Chapter 7 trustee. Mitchell objected to the Macklins' claim for an exemption in a personal injury annuity. Mitchell obtained court approval to employ Daniel Vidas and the law firm of Dunn, Carney to represent him in opposing the Macklins' claim of exemption in the annuity. After the parties had fully briefed the issue regarding the Macklins' entitlement to an exemption in

---

**1.** Unless otherwise indicated, all statutory references are to the Bankruptcy Code, 11 U.S.C. §§ 101–1330.

the annuity, the Macklins conceded that the annuity proceeds were not exempt and moved to convert their case to Chapter 13.

Mitchell filed the Final Report in the Chapter 7 case stating that he had neither collected nor disbursed funds. The report claims a commission in the amount of $4,250 and expenses of $8.55, and Mitchell filed an Application for Chapter 7 Professional Compensation (Claim No. 3) seeking payment of these sums as an administrative expense in the Macklins' Chapter 13 case. The commission amount is the maximum commission set forth in 11 U.S.C. § 326(a) based on distributions totaling $35,000, the amount Mitchell asserts would have been distributed to pay unsecured creditors in full from the Chapter 7 estate.[2] The Macklins objected to Claim No. 3.[3]

The issue common to these cases is whether a Chapter 7 trustee is entitled to *any* compensation, beyond the statutory minimum provided for in § 330(b) of the Bankruptcy Code, when a case is converted to Chapter 13 prior to the receipt and disbursement of any funds by the Chapter 7 trustee. The *Colburn* case presents the additional issue as to whether counsel for a Chapter 7 trustee, employed pursuant to § 327(a), is entitled to compensation for services performed for the benefit of the Chapter 7 estate, where the case is converted to Chapter 13 before any assets have been collected and liquidated in Chapter 7. I will deal first with the issue of Chapter 7 trustee compensation.

A. *A Chapter 7 trustee may be entitled to compensation if the case is converted to Chapter 13 before any funds are collected and disbursed by the trustee.*

1. *Sections 330 and 326(a): Provisions for allowance and limitation of Chapter 7 trustee compensation.*

The primary provisions of the Bankruptcy Code relating to trustee compensation are set forth in §§ 326 and 330. Section 330(a)(1) provides in relevant part:

> After notice to the parties in interest and the United States Trustee and a hearing, *and subject to sections 326, 328, and 329,* the court may award to a trustee...(A) reasonable compensation for actual, necessary services rendered by the trustee...and by any paraprofessional person employed by any such person; and (B) reimbursement for actual, necessary expenses. (Emphasis added.)

Section 330 authorizes compensation and reimbursement of expenses for officers of the bankruptcy estate, including trustees. It further prescribes the standards for determining the amount of reasonable compensation to be approved. *See* H. Rept. No. 95–595 to accompany H.R. 8200, 95th Cong., 1st Sess. (1977) at pp. 329–30, U.S.Code Cong. & Admin.News 1978, p. 5787. However, § 330 expressly is subject to the provisions of § 326, which sets limits to trustee compensation.

Section 326(a) provides:

> *In a case under chapter 7 or 11,* the court may allow reasonable compensation under section 330 of this title of the trustee for the trustee's services, payable after the trustee renders such services, not to exceed 25 percent on the first $5,000 or less, 10 percent on any amount in excess of $5,000 but not in excess of $50,000, 5 percent on any amount in excess of $50,000 but not in excess of $1,000,000, and reasonable compensation not to exceed 3 percent of such moneys in excess of $1,000,000, *upon all moneys disbursed or turned over in the case by the trustee to parties in interest,* excluding the debtor, but including holders of secured claims. (Emphasis added.)

---

2. In his proof of claim, Mitchell asserts that the Macklins' annuity has a present value of $100,-000. The Macklins listed unsecured nonpriority claims totaling $34,240 in their original Chapter 7 Schedules, but in their Summary of Schedules, the Macklins included a total of $35,233 for unsecured nonpriority claims. These numbers are unchanged in the Macklins' Chapter 13 Schedules.

3. Vidas and Dunn, Carney have filed an Application for Chapter 7 Professional Compensation (Claim No. 14). As of the date of this Memorandum Opinion, the Macklins have not objected to Claim No. 14.

The legislative history emphasizes that § 326(a) does not prescribe appropriate compensation for trustees. "This section simply fixes the maximum compensation of a trustee....The limits in this section, together with limitations found in section 330, are to be applied as outer limits, and not as grants or entitlements to the maximum fees specified." H. Rept. No. 95-595 to accompany H.R. 8200, 95th Cong., 1st Sess. (1977) at pp. 327, 328.

At least one court has interpreted § 326(a) as literally precluding any compensation to Chapter 7 trustees in converted cases where no moneys have been disbursed or turned over during the Chapter 7 proceedings, beyond the minimum provided in § 330(b). *See In re Fischer*, 210 B.R. 467 (Bankr.D.Minn. 1997).

■ However, I agree with the majority of courts that have considered this issue and have determined that § 326(a) does not preclude Chapter 7 trustee compensation in cases that are dismissed on the debtor's motion or converted to Chapter 13 prior to completion of Chapter 7 administration.[4] *See, e.g., In re Berry*, 166 B.R. 932 (Bankr. D.Or.1994); *In re Tweeten Funeral Home, PC*, 78 B.R. 998 (Bankr.D.N.D.1987); *In re Stabler*, 75 B.R. 135 (Bankr.M.D.Fla.1987); *In re Woodworth*, 70 B.R. 361 (Bankr. N.D.N.Y.1987); *In re Parameswaran*, 64 B.R. 341 (Bankr.S.D.N.Y.1986); *In re Smith*, 51 B.R. 273 (Bankr.D.D.C.1984); *In re Pray*, 37 B.R. 27 (Bankr.M.D.Fla.1983); *In re Flying S Land & Cattle Company, Inc.*, 23 B.R. 56 (Bankr.C.D.Cal.1982); and *In re Rennison*, 13 B.R. 951 (Bankr.W.D.Ky.1981).

I have come to this conclusion based both upon the language of § 326(a) and its function in the scheme of the Bankruptcy Code.

■ Reasonable compensation to trustees is determined under the standards of § 330. *See In re Financial Corp. of America*, 114 B.R. 221, 223–24 (9th Cir. BAP 1990), *aff'd*,

946 F.2d 689 (9th Cir.1991). Section 326 acts independently as a limit on trustee compensation. *Id.* By its terms, § 326(a) limits trustee compensation to certain percentages of "all moneys disbursed or turned over in the case by the trustee to parties in interest, excluding the debtor..." in "a case under chapter 7 or 11." In other words, it limits compensation to trustees in Chapter 7 or 11 cases where funds in fact have been distributed to parties in interest other that the debtor. However, the terms of § 326(a) do not address the circumstances of Chapter 7 cases where assets have been found, that convert to Chapter 13 before assets are liquidated and disbursed. Such cases often require the Chapter 7 trustee to render substantial services for the benefit of the estate prior to conversion, as mandated by § 704[5] —services for which the Chapter 7 trustee would receive no reasonable compensation if the terms of § 326(a) were extended to cover such cases. Such a result cannot have been intended and is unwarranted in light of the specific language used in § 326(a).

The *Colburn* and *Macklin* cases no longer are Chapter 7 cases, as they both have been converted to Chapter 13, and no funds were disbursed or turned over to interested parties in either case by the Chapter 7 trustee prior to conversion. In such cases, by its terms, read literally, § 326(a) simply does not apply to preclude trustee compensation.

2. *Section 326(c) does not limit Chapter 7 trustee compensation in a case converted to Chapter 13.*

At the *Colburn* hearing, counsel for Nilsen argued that if § 326(a) did not preclude Chapter 7 trustee compensation entirely following conversion to Chapter 13, § 326(c) would limit the aggregate compensation of the Chapter 7 and Chapter 13 trustees to the Chapter 13 trustee compensation limit set forth in § 326(b). Section 326(c) provides that "[i]f more than one person serves as trustee in the case, the aggregate compensa-

---

4. Such compensation and reimbursement of actual and necessary expenses constitute administrative expenses in the Chapter 13 case, consistent with the provisions of § 348(d). *See, e.g., In re Bottone*, 226 B.R. 290, 295–96 (Bkrtcy.D.Mass. 1998).

5. Section 704 provides that "[t]he trustee *shall*— (1) collect and reduce to money the property of the estate for which such trustee serves ... [and] (4) investigate the financial affairs of the debtor...." (Emphasis added.)

tion of such persons for such service may not exceed the maximum compensation prescribed for a single trustee by subsection (a) or (b) of this section, as the case may be."

■ Section 326(c) was designed to solve a perceived problem in liquidating cases under the Bankruptcy Act where the receiver and the succeeding trustee could receive maximum compensation for performing the same functions, *i.e.*, liquidating the same assets. Such "double dipping," especially in cases where the receiver and the trustee were the same individual, was regarded justifiably as contrary to the interests of creditors and as needlessly inflating the costs of administration. *See, e.g.,* H. Rept. No. 95–595 to accompany H.R. 8200, 95th Cong., 1st Sess. (1977) at pp. 327, 328; *In re Yale Mining Corp.,* 59 B.R. 302, 303–06 (Bankr.W.D.Va. 1986).

Section 326(c) addresses potential abuses arising from more than one trustee serving in the same case and seeking compensation independently for performing the same functions. What it does not address is the situation in a converted case where trustees, working independently, perform different functions.

■ A Chapter 7 trustee's duties encompass investigating, liquidating, handling and distributing assets of the Chapter 7 estate. *See* § 704. While a Chapter 13 trustee performs some of the same or similar investigative and fiduciary functions of a Chapter 7 trustee, the work of the Chapter 13 trustee is focused primarily on administration of the Chapter 13 debtor's plan, a very different job. *See* § 1302.

Since the functions of Chapter 7 and Chapter 13 trustees are fundamentally different, where a Chapter 7 case is converted to Chapter 13, trustee compensation should be determined independently under the standards of § 330, and applying § 326(c) as a further limiting factor would be inappropriate. *See In re Yale Mining Corp.,* 59 B.R. at 305–07.

3. *Section 330(b) does not preclude Chapter 7 trustee compensation under Section 330(a) in a case converted to Chapter 13.*

■ Another potential limit on Chapter 7 trustee compensation in a case converted to Chapter 13 is § 330(b). Section 330(b) provides for payment to the trustee of a portion of the filing fee, currently $60, in each Chapter 7 case. In the *Fischer* case, the court determined that the § 330(b) payment was the only authorized compensation for the Chapter 7 trustee in a case converted to Chapter 13, even though the court found that the reasonable value of the Chapter 7 trustee's services was $290. *See In re Fischer,* 210 B.R. at 469. However, the legislative history indicates that § 330(b) was designed to provide a minimum compensation for trustees in no asset cases where the administrative functions of the trustee would be negligible. *See* S. Rept. No. 95–989 to accompany S. 2266, 95th Cong., 2d Sess. (1978) at pp. 40, 41, U.S.Code Cong. & Admin.News 1978, p. 5787. It does not provide reasonable or adequate compensation in a case in which the Chapter 7 trustee has made substantial efforts to recover nonexempt assets, only to be prevented from completing liquidation and distribution of the estate by the debtor's conversion to Chapter 13. It was not designed to provide such compensation.

4. *Section 326 does not preclude Chapter 7 trustee compensation in cases converted to Chapter 13.*

In light of the foregoing analysis, the provisions of § 326 do not prevent this court from approving an award of reasonable compensation to a Chapter 7 trustee under § 330(a) in a case converted from Chapter 7 to Chapter 13. The limitations of §§ 326(a) and (c) do not cover the situation of an asset case converted to Chapter 13 before nonexempt assets have been liquidated and disbursed or turned over in Chapter 7. Accordingly, I find that the "subject to section 326" restriction of § 330(a) is a restriction without any direct application in such cases.[6] Like-

---

6. A situation where consideration of the provisions of § 326(a) could become relevant in determining reasonable compensation for the Chapter

7 trustee in this context is where the Chapter 7 trustee in a case converted to Chapter 13 requests compensation in excess of the 326(a) per-

wise, I find that the limited compensation provided for in § 330(b) does not restrict the allowance of compensation to a Chapter 7 trustee under § 330(a) outside of a "no asset" case.[7]

B. *What is reasonable compensation to the Chapter 7 trustees in the Colburn and Macklin cases for purposes of § 330(a)?*

Having determined that the Chapter 7 trustee is entitled to reasonable compensation and reimbursement for actual and necessary expenses under § 330(a), to be treated as an administrative expense, in both the *Colburn* and *Macklin* cases, I further must determine what award of compensation and expense reimbursement is appropriate in each case.

1. *Reasonable compensation in the Colburn case.*

In the *Colburn* case, the parties are agreed that in the event I determine that Grassmueck is entitled to compensation, the matter should be set for an evidentiary hearing to determine what compensation is reasonable. Accordingly, the issue of what compensation Grassmueck reasonably is entitled to in the *Colburn* case will be scheduled for an evidentiary hearing upon 20 days' notice to all interested parties. The court will prepare and mail the notice of hearing.

2. *Reasonable compensation in the Macklin case.*

In the *Macklin* case, Mitchell filed a proof of claim in the Chapter 13 case requesting compensation of $4,250 and reimbursement of $8.55 for copy charges. The case originally was filed under Chapter 7 as a "no asset" case. However, after Mitchell objected to the Macklins' claimed annuity exemption, they moved to convert their case to Chapter 13. The plan confirmed in the Macklins' Chapter 13 case provides that their unsecured creditors will be paid 100% of their allowed claims plus interest at the rate of 9% per annum. Mitchell's claim for compensation was based upon applying the § 326(a) percentage schedule to a projected 100% distribution of $35,000 to nonpriority unsecured creditors in the Macklins' Chapter 7 case.

Prior to the March 8, 1999 hearing in the *Macklin* case, Mitchell filed an itemization of time that reflected that Mitchell spent 2.9 hours, and his paralegal employees spent 8.4 hours on the *Macklin* Chapter 7 case. At the hearing, Mitchell stated that his normal hourly billing rate is $200, and the normal hourly billing rate for his paralegal employees is $70.

Mitchell argued that simply applying a "lodestar" standard would not provide reasonable compensation in this case. First, the "lodestar" would not take into account the benefits achieved in transforming the *Macklin* case from a no asset case in Chapter 7 to a Chapter 13 providing for payment of a 100% dividend plus 9% interest to unsecured creditors. Second, Mitchell asserted that he would not perform the services he performed as Chapter 7 trustee in the *Macklin* case outside of the bankruptcy context for the normal hourly rates specified.

---

centages applied to amounts that could have been disbursed in Chapter 7. In light of the strong policy expressed by Congress in adopting § 326(a) to limit the compensation of Chapter 7 trustees consistent with actual disbursements to interested parties in Chapter 7, it would not be reasonable or appropriate to approve Chapter 7 trustee compensation in a greater amount in Chapter 13. *See* H. Rept. No. 95–595 to accompany H.R. 1200, 95th Cong., 1st Sess. (1977) at pp. 327, 328; S. Rept. No. 95–989 to accompany S. 2266, 95th Cong., 2d Sess. (1978) at pp. 37, 38.

7. Most courts that have approved compensation to Chapter 7 trustees in cases converted to Chapter 13 have awarded compensation based upon *quantum meruit*. Since my analysis of the rele-

vant Bankruptcy Code provisions has led me to the conclusion that compensation is appropriate pursuant to § 330, I see no reason to look beyond the Bankruptcy Code for justification to support approval of reasonable compensation.

I also note that in *In re Weibel, Inc.*, 176 B.R. 209, 212 (9th Cir. BAP 1994), the Ninth Circuit Bankruptcy Appellate Panel repudiated *quantum meruit* as a basis for approving professional compensation in bankruptcy. While the *Weibel* case applied specifically to a request for compensation by counsel for a Chapter 11 debtor-in-possession whose employment application was denied, the court expressed its disapproval of using *quantum meruit* to allow professional compensation in general terms. *Id.*

In Mitchell's opinion, doubling the hourly rates might provide reasonable compensation for his services in the *Macklin* case. The U.S. Trustee took the position that although Mitchell was entitled to compensation as an administrative expense in the *Macklin* case, it would not be appropriate to compensate Mitchell based upon application of the § 326(a) percentages to the projected distribution to creditors. The U.S. Trustee suggested, without articulating a basis for the amount, that reasonable compensation should be allowed in the range of $2,000–$2,500.

Neither counsel for the Macklins nor the Chapter 13 trustee took a position as to what reasonable compensation would be for Mitchell. However, they concurred that an award of compensation much in excess of $2,000 would potentially jeopardize the feasibility of the Macklins' 100% plus interest Chapter 13 plan.

 Because, among other reasons, I have determined that the restrictions of § 326(a) do not apply to the determination of reasonable compensation under § 330(a) in the context of this converted case, it would not be appropriate to approve compensation for Mitchell based upon applying the § 326(a) percentages to a projected distribution to creditors. I will approve compensation to Mitchell based upon the itemization of time submitted in advance of the March 8, 1999 hearing, with the following deductions:

John Mitchell

| | | |
|---|---|---|
| Oct 2 Reviewed debtors Chapter 13 Plan and letter from Vidas | | .1 hour |
| Oct 6 Reviewed and signed fee application | | .1 hour |
| | TOTAL | .2 hours |

Diana Shibler

| | | |
|---|---|---|
| Oct 6 Prepare Certificate of Service & Envelopes, Copy and Mail Fee App | | |
| | TOTAL | .3 hours |

Kathy Moody

| | | |
|---|---|---|
| Oct 6 Prepare Fee App | TOTAL | .5 hours |

I am not approving compensation to Mitchell for the foregoing time entries because under § 348(e), conversion of the Macklins'

case to Chapter 13 terminated Mitchell's services.[8] Upon such termination, compensation only is appropriate for Mitchell's and his paralegals' services with respect to preparation and filing of the Final Report and closing the file. *See, e.g., In re Roberts,* 80 B.R. 565, 567 (Bankr.N.D.Ga.1987).

At Mitchell's normal hourly rates, his Chapter 7 trustee compensation under the "lodestar" standard with respect to the *Macklin* case, minus the deductions noted above, would total $1,072. However, I find that Mitchell's efforts were instrumental in transforming this case from a "no asset" Chapter 7 to a 100% plus interest plan in Chapter 13. I am authorized to consider the beneficial effects of Mitchell's services in determining reasonable compensation. 11 U.S.C. § 330(a)(3)(A)(C). Based upon the extraordinary results achieved in this particular case, I will approve compensation to Mitchell at double the normal hourly rates in the amount of $2,144, plus reasonable expenses of $8.55, for a total of $2,152.55, to be paid as an administrative expense pursuant to §§ 503(b)(2), 507(a)(1) and 1322(a)(2). Such an enhancement is consistent with the enhancement for professional compensation affirmed by the Ninth Circuit in *Fadhl v. City and County of San Francisco,* 859 F.2d 649 (9th Cir.1988).

The court will prepare and send a Notice and Order consistent with this Memorandum Opinion notifying all interested parties in the *Macklin* case of this Court's intent to approve the foregoing award and providing that the Order on Mitchell's compensation and reimbursement of expenses will become final unless an interested party files an objection and request for hearing within 20 days following the mailing date of the notice.[9]

C. *Counsel for the Chapter 7 trustee may be entitled to compensation in a case converted to Chapter 13 before any funds are collected and disbursed by the Chapter 7 trustee.*

 Approving reasonable compensation for the Chapter 7 trustee's counsel, whose

---

8. Section 348(e) provides that "[c]onversion of a case under Section 706 ... of this title terminates the service of any trustee or examiner that is serving in the case before such conversion."

9. Fed. R. Bankr.P.2002(a)(6) requires at least 20 days' notice by mail and an opportunity for a hearing on all applications for compensation or reimbursement of expenses totaling more than $500.

employment has been approved pursuant to § 327(a), in a case converted to Chapter 13 seems to be a much less controversial proposition than approving compensation for the Chapter 7 trustee in like circumstances. I have found no decisions that have declined to approve reasonable compensation and reimbursement of expenses in such cases. *See, e.g., In re Collins,* 210 B.R. 538 (Bankr. N.D.Ohio 1997); *In re Wells,* 87 B.R. 732 (Bankr.N.D.Ga.1988); *In re Roberts,* 80 B.R. at 568–70; *In re Woodworth,* 70 B.R. at 363; and *In re Parameswaran,* 64 B.R. at 344. However, I have noted that in such cases, the court particularly is careful in evaluating whether the services of the Chapter 7 trustee's counsel were reasonable and necessary and what benefits resulted to the estate. I find that Thomas Renn, counsel for Grassmueck in the *Colburn* case, is entitled to reasonable compensation for his services under § 330, to be treated as an administrative expense of the Chapter 13 case pursuant to the provisions of §§ 503(b)(2), 507(a)(1) and 1322(a)(2).

What constitutes reasonable compensation to Renn will be determined based upon an evidentiary hearing, to be held in conjunction with the evidentiary hearing to determine reasonable compensation for Grassmueck in the *Colburn* case, upon 20 days' notice to all interested parties. Notice for the hearing will be incorporated in the notice of hearing with regard to trustee compensation and will be prepared and mailed by the court.

### Conclusion

In summary, I find that the Chapter 7 trustees in the *Colburn* and *Macklin* cases and counsel for the Chapter 7 trustee in the *Colburn* case are entitled to reasonable compensation for their services and reimbursement of actual and necessary expenses, to be treated as administrative expenses in the pending Chapter 13 cases.

In the *Macklin* case, I find that Mitchell is entitled to an award of compensation and reimbursement of expenses totaling $2,152.55, subject to notice to all interested parties with a reasonable opportunity to object.

In the *Colburn* case, the Clerk will schedule an evidentiary hearing to determine reasonable compensation for Grassmueck and Renn upon 20 days' notice to all interested parties.