**In re RADICAL BUNNY, LLC, Debtor.**

No. 08–13884–CGC.

United States Bankruptcy Court, D. Arizona.

July 22, 2011.

Shelton L. Freeman, Deconcini Mc-Donald Yetwin & Lacy PC, Phoenix, AZ, for Debtor.

## UNDER ADVISEMENT DECISION APPROVING CHAPTER 11 TRUSTEE'S FEE APPLICATION

CHARLES G. CASE, II, Bankruptcy Judge.

### I. Introduction

G. Grant Lyon agreed to become part of a Valley financial soap opera—the downfall of Mortgages Limited. It is a tale that includes suicide, empty buildings, and lost retirement savings. Mr. Lyon's role in the soap opera is that of Chapter 11 Trustee for Radical Bunny—a key investor in Mortgages Limited. Depending on your viewpoint, he is either yet another professional who did little or nothing to protect investors while trying to make money off of the backs of investors, or a dedicated professional who protected investors as best he could in a dire situation who deserves to be compensated for his time and effort. The Court must decide if Mr. Lyon deserves to get paid and, if so, whether he is entitled to payment under the Bankruptcy Code.

### II. Background and Facts

The Trustee requests $176,035.00 in fees for his services to the estate from December 29, 2008 through September 3, 2010. The Court appointed Mr. Lyon as the Trustee on December 30, 2008 via a stipulation between the U.S. Trustee's office and the Debtor, with the consent of the Petitioning Creditors[1] and the Official Unsecured Creditors Committee. Several investors opposed the appointment prior to the stipulation. At its core, the Petitioning Creditors requested the appointment of a trustee based on civil and criminal investigations by the SEC and the State of Arizona of those running Radical Bunny, including Tom Hirsch. This request turned out to be prophetic, at least on a civil basis, as the District Court recently granted summary judgment in the SEC's civil case, finding that Mr. Hirsch and others violated securities law prepetition while operating the Debtor.

This is the Trustee's first and final application for compensation ("Application"). According to the Application, the Trustee spent 307.6 hours on the matter at the rate of $475 per hour, resulting in $176,035.00 in fees.[2] The Trustee supplies underlying documentation in support of these hours and claims that both the amount of time and the hourly rate are reasonable. Fur-

---

1. Cathy Baker, Laing "Ned" Kandel, and Steve Friedberg (collectively "Petitioning Creditors") were the petitioning creditors and brought the motion to appoint a trustee.

2. The Trustee advised the Court that his rate is $475 per hour in the Trustee's December 23, 2008 verified statement. The Court approved his appointment subject to the terms of the verified statement.

ther, the Trustee claims that he made the following distributions:

1) approximately $162 million (face amount) in membership interests in various loan-specific limited liability companies created as part of the Mortgages, Ltd. bankruptcy case (the "Loan LLCs");

2) a beneficial interest in the Mortgages, Ltd. liquidating trust of approximately $35 million plus any deficiency from the Loan LLCs; and

3) any potential causes of action and lawsuits against any person or party held by the Debtor's estate.

The Court has reviewed each of the over 275, mostly form, objections to the Application. Though the specifics of the objec-tions varied, they generally fell into one of four categories:

1) excessive fees;

2) lack of return to investors;

3) lack of communication; and

4) basic unfairness.

The Trustee did not respond to the objections in writing. The Court held a hearing on the matter on April 7, 2011 at which counsel for the Trustee and some of the objectors appeared. At the conclusion of the hearing, the Court took the matter under advisement.

### III. Analysis

 When awarding fees to a Trustee, the Court analyzes the interplay of Sections 330(a)(1), 330(a)(3), 330(a)(7), and 326(a) of the Bankruptcy Code.[3] Although

---

3. Section 330(a)(1) reads:
 After notice to the parties in interest and the United States Trustee and a hearing, and subject to sections 326, 328, and 329, the court may award to a trustee, a consumer privacy ombudsman appointed under section 332, an examiner, an ombudsman appointed under section 333, or a professional person employed under section 327 or 1103—
 (A) reasonable compensation for actual, necessary services rendered by the trustee, examiner, ombudsman, professional person, or attorney and by any paraprofessional person employed by any such person; and
 (B) reimbursement for actual, necessary expenses.
 Section 330(a)(3) reads:
 In determining the amount of reasonable compensation to be awarded to an examiner, trustee under chapter 11, or professional person, the court shall consider the nature, the extent, and the value of such services, taking into account all relevant factors, including—
 (A) the time spent on such services;
 (B) the rates charged for such services;
 (C) whether the services were necessary to the administration of, or beneficial at the time at which the service was rendered toward the completion of, a case under this title;
 (D) whether the services were performed within a reasonable amount of time commensurate with the complexity, importance, and nature of the problem, issue, or task addressed;
 (E) with respect to a professional person, whether the person is board certified or otherwise has demonstrated skill and experience in the bankruptcy field; and
 (F) whether the compensation is reasonable based on the customary compensation charged by comparably skilled practitioners in cases other than cases under this title.
 Section 330(a)(7) reads:
 In determining the amount of reasonable compensation to be awarded to a trustee, the court shall treat such compensation as a commission, based on section 326.
 Section 326(a) reads:
 In a case under chapter 7 or 11, the court may allow reasonable compensation under section 330 of this title of the trustee for the trustee's services, payable after the trustee renders such services, not to exceed 25 percent on the first $5,000 or less, 10 percent on any amount in excess of $5,000 but not in excess of $50,000, 5 percent on any amount in excess of $50,000 but not in excess of $1,000,000, and reasonable compensation not to exceed 3 percent of such moneys in excess of $1,000,000, upon all moneys disbursed or turned over in the case by the trustee to parties in interest,

the objections make no specific references to the Code, the Court treats the objections as follows:

1) excessive fees—§§ 326(a) and 330(a)(3);

2) lack of return to investors—§ 326;

3) lack of communication—§ 330(a)(3); and

4) basic unfairness—§ 330(a)(1).

Aside from the objections, the "Court has an independent duty to investigate the reasonableness of compensation sought." *In re Pruitt*, 319 B.R. 636, 638 (Bankr. S.D.Cal.2004) (citing Rule 2016(a)). As stated in *Pruitt*:

> The public expects, and has a right to expect, that an order of a court is a judge's certification that the result is proper and justified under the law.... Nothing better serves to allay [public perceptions that high professional fees unduly drive up bankruptcy costs] than the recognition that a bankruptcy judge, before a fee application is approved, is obliged to [review it carefully] and find it personally acceptable, irrespective of the (always welcomed) observation of the [United States trustee] or other interested parties.

*Id.* (quoting *In re Busy Beaver Bldg. Ctrs., Inc.*, 19 F.3d 833, 841 (3rd Cir.1994)). "The applicants have the burden of proof to show their fees and expenses are reasonable." *In re Tan, Lie Hung & Mountain States Investments, LLC*, 413 B.R. 851, 856 (Bankr.D.Or.2009). Here, as the Court openly suggested during the hearing, it needs to be satisfied that the Trustee is entitled to any compensation under the limits set forth in §§ 326 and 330.

### A. Section 330

■■■ "In the Ninth Circuit, the primary method used to determine a reason-

able fee in bankruptcy cases is to calculate the lodestar" which is computed "by multiplying the number of hours reasonably expended by a reasonable hourly rate." *In re Buckridge*, 367 B.R. 191, 201 (Bankr. C.D.Cal.2007). To receive compensation, a professional need not bring material benefit to the estate, but "need demonstrate only that the services were reasonably likely to benefit the estate at the time rendered." *In re Garcia*, 335 B.R. 717, 724 (9th Cir. BAP 2005). Factors to consider when determining reasonableness include:

(a) Were the services authorized?

(b) Were the services necessary or beneficial to the administration of the estate at the time they were rendered?

(c) Are the services adequately documented?

(d) Are the fees required reasonable, taking into consideration the factors set forth in section 330(a)(3)?

(e) In making the determination, the court must consider whether the professional exercised reasonable billing judgment.

*Id.*

■■■ The Court concludes that the fees requested are reasonable under § 330(a). Spending over 370 hours on a case this complex is certainly reasonable. While the rate of $475 per hour is generous, it is well within the bounds of rates charged within this District and has already been approved by the Court. It is beyond doubt that the Trustee's services were necessary, especially in light of the recent SEC civil proceedings. Though the Trustee's services could have been better documented, there is adequate description of his services.

excluding the debtor, but including holders of secured claims.

Ultimately, the Court understands that many of the objectors do not think the Trustee was successful in his job because he did not provide an adequate return for them. The Court disagrees. Yes, at best, investors in the Debtor will recover pennies on the dollar. But, this was a highly complex matter where investors in the Debtor faced the real possibility of recovering nothing. The fact that the Trustee garnered almost $200 million in potential assets is an accomplishment.

If the Court only had to analyze § 330 to award the Trustee fees, the result would be easy and the fees would be approved. But, according to § 330(a)(7), when fees are sought by a trustee, they must be treated as a commission under the specific language of § 326. It is to that language that we now turn.

### B. Section 326

 "[S]tatutory construction is a holistic endeavor" and "cannot be construed in a vacuum. It is a fundamental canon of statutory construction that the words of a statute must be read in their context and with a view to their place in the overall statutory scheme." *In re Ransom*, 380 B.R. 799, 807 (9th Cir. BAP 2007) (internal quotations omitted), *aff'd*, 577 F.3d 1026 (9th Cir.2009), *aff'd sub nom. Ransom v. FIA Card Services, N.A.,* — U.S. ——, 131 S.Ct. 716, 178 L.Ed.2d 603

(2011). The starting point for statutory interpretation is a review of the language used by Congress in the current version of the law. *See, e.g., Hughes Aircraft Co. v. Jacobson*, 525 U.S. 432, 438, 119 S.Ct. 755, 142 L.Ed.2d 881 (1999). Where the text is plain, the court is to apply the statute as written, unless the application would lead to absurd results. *Lamie v. U.S. Trustee*, 540 U.S. 526, 534, 124 S.Ct. 1023, 157 L.Ed.2d 1024 (2004). Meaning must be given to a statute's every word. *Miller v. United States*, 363 F.3d 999, 1008 (9th Cir.2004). A subsection of a statute is defined in the context of the entire statute and the statutory scheme as a whole. *In re Rufener Const., Inc.*, 53 F.3d 1064, 1066–67 (9th Cir.1995).

The key phrase from § 326 that the Court must interpret is that a Trustee's fee is based on a given percentage "upon all moneys disbursed or turned over in the case by the trustee to parties in interest." "Money" is a medium of exchange or an asset that can easily be converted to cash. *See* A.R.S. § 47–1201(B)(24); UCC § 201(b)(25); WEBSTER's THIRD NEW INTERNATIONAL DICTIONARY (UNABRIDGED) 1458 (Philip Babcock et al. eds., 1993); Black's Law Dictionary 1096 (9th ed. 2009).[4] Here, the Trustee did not distribute money in the traditional sense. Could then "money," in the Code, mean something other than it does in plain English?

---

4. Money as defined under: A.R.S. § 47–1201(B)(24) and UCC–201(b)(24):

> a medium of exchange currently authorized or adopted by a domestic or foreign government. The term includes a monetary unit of account established by an intergovernmental organization or by agreement between two or more countries; .

WEBSTER's THIRD NEW INTERNATIONAL DICTIONARY (UNABRIDGED) 1458 (Philip Babcock et al. eds., 1993):

> 1. something generally accepted as a medium of exchange, a measure of value, or a means of payment ... 2a. assets or com-

> pensation in the form of or readily convertible to cash ...;

Black's Law Dictionary 1096 (9th ed. 2009):

> 1. The medium of exchange authorized or adopted by a government as part of its currency; esp. domestic currency <coins and currency are money>. UCC § 1–201(24). 2. Assets that can be easily converted to cash <demand deposits are money>. 3. Capital that is invested or traded as a commodity <the money market> 4.(pl.) Funds; sums of money <investment moneys>.—Also spelled (in sense 4) monies. See medium of exchange; legal tender;

#### i. A Brief History of Section 326

Section 326 reads essentially the same as Section 48 of the Bankruptcy Act. Interestingly, the phrase "all moneys disbursed or turned over" has been a part of the Bankruptcy Act and Code since 1910. *In re Blair,* 313 B.R. 865, 868 n. 4 (Bankr. E.D.Cal.2004); *See also* Colliers on Bankruptcy (14th ed. 1988) ¶ 48.07[2].[5]

Despite the apparent plain meaning of "money," courts have found and applied exceptions to the Act and Code. Perhaps the earliest exception is found in *In re Toole,* 294 F. 975 (D.C.N.Y.1920). In *Toole,* the administrator of an estate did not distribute cash but instead distributed securities. Judge Augustus Hand found it "reasonable to suppose that the words 'or turned over' are sufficient to include property at the value received, as well as 'moneys disbursed.' " *Id.* at 977. As aptly, and perhaps prophetically, observed by Judge Hand, "[i]f no compensation can be awarded, except commissions which may be calculated upon the general estate, it is literally true that no competent person would wisely accept the office of receiver or trustee of such an estate." *Id.* at 976.

#### ii. Constructive Disbursement

*Toole* appears to be the basis of the doctrine of constructive disbursement. Under this theory, when a trustee sells property subject to liens or mortgages or sells property in a credit bid sale, the value of the lien or the property (or the value of the claim being discharged by the transfer) is considered to have been constructively disbursed by the trustee to the party in interest. *See In re Barnett,* 133 B.R. 487, 489 (Bankr.N.D.Iowa 1991). "The basis for the theory is to insure to trustees compensation commensurate with their

services, particularly when the estate's administration is complex and the estate benefits from the services." *New England Fish Co.,* 34 B.R. 899, 900 (Bankr. W.D.Wash.1983) (citing 2 Collier on Bankruptcy § 326.01 (15th ed.)); *see Southwestern Media, Inc. v. Rau,* 708 F.2d 419, 423 (9th Cir.1983) (dictum). "[A]dopting the constructive disbursement theory is tantamount to holding that the statutory language is sufficient to include property as value received as 'moneys disbursed.' " *In re Lan Assoc. XI, L.P.,* 237 B.R. 49, 56–57 (D.N.J.1998) (disapproving of the theory; citing to *New England Fish,* 34 B.R. at 900).

By no means has *Toole* or the theory of constructive distribution been universally adopted. *See* Collier on Bankruptcy (*14th ed.*) ¶ 48.07[3] (citing *In re Morris Bros.,* 8 F.2d 629 (D.Or.1925); *In re Detroit Mortg. Corp.,* 12 F.2d 889 (6th Cir.1926)). As stated in *Morris Bros.,* "I am aware that Judge Hand held [in *Toole* ] that the words 'or turned over' are sufficient to include property at value received, as well as money disbursed; but in my opinion, when the statute says money disbursed or turned over, it means money, and not property." 8 F.2d at 630. (citing *American Surety Co. v. Freed,* 224 F. 333 (3d Cir.1915)). According to *New England Fish,* a majority of courts have held that the under "the plain and unambiguous wording of § 326(a) ... the trustee's compensation must be based on actual monies disbursed to parties in interest, and not on assets or settlements which can be construed as a constructive disbursement." 34 B.R. at 902.

However, in *Rau,* the 9th Circuit appears to be one of the courts that has

---

**5.** Section 326 replaced Section 48 when Congress enacted the Bankruptcy Code in 1978 which became generally effective on October 1, 1979.

adopted constructive distribution.[6] The Chapter 11 trustee in *Rau* successfully managed the sale of radio station which resulted in the creditors being paid in full, including the assumption by the buyer of a $1,000,000 lien on the station, as well as $600,000 in distributions to shareholders of the debtor. 708 F.2d at 421–22. A creditor objected to the fee request claiming that the Trustee did not "distribute" the $1,000,000 to the lienholder. *Id.* at 422–23. The Circuit disagreed, finding that an equity sale subject to an existing lien should be considered a constructive disbursement to a lien creditor. *Id.* at 423–24. However, *Rau* is not precedential on this point, as the Circuit decided that it did not need to rely on constructive distribution and instead awarded fees on other grounds. *Id.* at 424. Nonetheless, *Rau* suggests that under the proper circumstances, the Court can increase the fee cap via constructive disbursement.

### iii. *Other Exceptions*

Courts in the Ninth Circuit have allowed the payment of fees under § 326(a) even though no money has been disbursed after a case has been converted. In *In re Financial Corp. of America*, the panel allowed fees to a Chapter 11 trustee, who also served as the Chapter 7 trustee after the case was converted from Chapter 11 to Chapter 7, even though he made no distributions under Chapter 11. 114 B.R. 221, 225 (9th Cir. BAP 1990). It concluded that "[t]urnovers made to a successor trustee should be included in the amount used to calculate the the [sic] Section 326(a) ceiling." *Id.* The Panel reasoned that "where the Chapter 11 trustee had per-

formed substantial services to the estate but disbursed little or nothing to third parties prior to conversion, failure to include turnovers under Section 326(a) would result in an artificial and mechanical limitation on the trustee's compensation." *Id.* at 226.

The court in *In re Hages,* 252 B.R. 789, 793–94 (Bankr.N.D.Cal.2000) awarded fees to a Chapter 7 trustee after conversion to a Chapter 13 who had not made distributions prior to conversion. The court found it to be:

> unacceptable and unwarranted to penalize hard-working interim trustees whose services have contributed to the administration of the bankruptcy estate but who have not actually distributed funds by depriving them of fees even though successor trustees, whether in a case pending under the same chapter or converted to another chapter, are successfully able to make distributions to parties in interest.

*Id.* at 793. Citing to § 1325(a)(4), the court reasoned that the Chapter 7 trustee turned over an estate that "that must generate distributions to creditors under a chapter 13 plan that are equal to or greater than they will receive in Chapter 7." *Id.* at 794. Thus, ultimately, not only would money be disbursed, but it would be greater than the money disbursed in a Chapter 7.

In *In re Colburn,* 231 B.R. 778 (Bankr. D.Or.1999), the court used different logic to award fees to a Chapter 7 trustee after conversion to a Chapter 13. In *Colburn,* Chapter 7 debtors[7] converted to Chapter

---

**6.** It is unclear to the Court whether the *New England Fish* court considered *Rau* in reaching its conclusion. Though *Rau* was decided six months prior, it was not cited in *New England Fish.* As such, this Court does not

construe *New England Fish* as a decision made under the guidance of *Rau.*

**7.** *Colburn* involves two debtors and trustees with similar facts which were consolidated

13 before any moneys were disbursed. *Id.* at 780. The *Colburn* court focused on the literal reading of § 326(a) and determined that after conversion the debtors were no longer under Chapter 7 and therefore " § 326(a) simply does not apply to preclude trustee compensation." *Id.* at 782.

Additionally, *In re Berry*, which relied in large part on *Financial Corp.*, awarded fees to a Chapter 7 trustee, after conversion to a Chapter 13, on a quantum meruit basis. 166 B.R. 932 (Bankr.D.Or.1994). In *Berry*, all agreed that the trustee deserved to be compensated, but differed as to the amount. *Berry* noted that it did differ from *Financial Corp.* in that "the trustee did not actually disburse funds to the Chapter 13 trustee." *Id.* at 934. Therefore, "[a] literal application of § 326 would seem to indicate that since no funds were disbursed to creditors by the trustee, that the trustee's compensation should be limited to the $45 provided in § 330(b) as there are no funds to which the percentage formula provided in § 326(a) may be applied." *Id.* In the end, the court agreed "with other courts that have considered this issue, [that] the trustee is entitled to compensation based upon the reasonable value of the actual and necessary services which were rendered by the trustee on a quantum meruit basis." *Id.* at 935.

Outside of this circuit, other courts have allowed "compensation on a quantum meruit basis when the trustee performs substantial services but does not disburse any monies in cases not fully administered through no fault of the trustee." *Kandel v. Alexander Leasing Corp.*, 107 B.R. 548, 551 (N.D.Ohio 1988) (citing *In re Stabler*, 75 B.R. 135, 136 (Bankr.M.D.Fla.1987); *In re Woodworth*, 70 B.R. 361, 362 (Bankr. N.D.N.Y.1987); *In re Parameswaran*, 64 B.R. 341, 343 (Bankr.S.D.N.Y.1986); *In re*

for the "Memorandum Opinion only." 231

*Pray*, 37 B.R. 27, 30 (Bankr.M.D.Fla. 1983)).

Since *Berry*, various courts in the Ninth Circuit have refused to apply quantum meruit in fee approval cases. For instance, in *In re Weibel, Inc.*, the Panel determined that "[t]he Code does not provide for fee awards based on state law theories such as quantum meruit" if a professional has not been approved by the court under § 327. 176 B.R. 209, 212 (9th Cir. BAP 1994) (citing *In re Occidental Fin. Grp., Inc.*, 40 F.3d 1059 (9th Cir.1994)). *Occidental* is another case where an unapproved professional asked for the approval of fees on a quantum meruit basis. The Circuit also determined that, "general rule the equitable remedy of quantum meruit cannot be available where the fees are barred by law under the bankruptcy rules." 40 F.3d at 1063; *See also In re Monument Auto Detail, Inc.*, 226 B.R. 219 (9th Cir. BAP 1998) (a firm's "failure to obtain court authorization for its employment was fatal to its ability to obtain payment for its chapter 11 services").

### iv. *This Court's Analysis*

█ Synthesizing these authorities suggests that, in the Ninth Circuit, constructive distribution may be appropriate in certain circumstances but basing a fee award on a theory, such as quantum meruit, that is outside of the statutory framework is not allowed.

Thus, the question: is an exception warranted under these facts? As noted, there is no Ninth Circuit opinion that answers the question directly. Ultimately, the Court must determine if a Chapter 11 trustee performs his duties as instructed by the Code, but does not distribute money, is it an absurd result to deny the trustee compensation? "[W]ords of gener-

B.R. at 779.

al meaning are used in a statute, words broad enough to include an act in question, and yet a consideration of ... the absurd results which follow from giving such broad meaning to the words, makes it unreasonable to believe that the legislator intended to include the particular act." *Chapman v. U.S.*, 500 U.S. 453, 476, 111 S.Ct. 1919, 114 L.Ed.2d 524 (1991) (quoting *Church of Holy Trinity v. United States*, 143 U.S. 457, 459, 12 S.Ct. 511, 36 L.Ed. 226 (1892)). The Court concludes that denying all fees to a Chapter 11 trustee who successfully confirms a plan that brings as much value as reasonably possible into the estate, albeit in non-monetary form, in a case where monetary recovery is all but impossible would be an absurd result not intended by the legislative process. Although strict application of § 326(a) would suggest such a result, applicable provisions of the other sections more strongly suggest the contrary.

The Trustee did exactly what the Code intended him to do and, significantly, the duties of a Chapter 7 trustee and a Chapter 11 trustee are very different. On one hand, a chapter 7 trustee, among other things, shall "collect and reduce to money the property of the estate for which such trustee serves, and close such estate as expeditiously as is compatible with the best interests of parties in interest." 11 U.S.C. § 704(a)(1). Thus, by definition, it is the job of a Chapter 7 trustee to monetize all assets of the estate and use that money to pay creditors. In this light, it makes complete sense to base a trustee's compensation on the amount of cash actually disbursed.[8] This accomplishes two goals: first, it provides an objective basis upon which to compensate a trustee, and,

second, it provides an incentive to the trustee to get money in the hands of creditors as quickly as possible in order to accelerate his entitlement to a fee.

On the other hand, there is no directive for a Chapter 11 trustee to "reduce to money" property of the estate. In fact, although § 1106(a) requires a Chapter 11 trustee to perform some duties listed in section 704(a), it *specifically excludes* subsection (a)(1) from the list. This dichotomy underscores the differences between the two types of trustee appointments. Rather, the Chapter 11 trustee's job is to operate the business and confirm a plan of reorganization, using as many of the tools in Section 1123 as may be appropriate to achieve the desired result under Section 1129.

With these points in mind, the Court concludes that "constructive disbursement" is an appropriate vehicle in a case like this to determine the outer limits of a trustee's compensation under § 326(a). Here, as set forth in the application, a "constructive disbursement" analysis suggests a fee cap far in excess of the amounts being sought. The actual fees should be based upon the lodestar and subject to the tests of Section 330(a) prior to allowance. As noted above, the Court finds that the Trustee's fee application meets those tests and therefore will be approved in full.

Counsel for the Trustee is to submit a form of order.

---

8. Prior to adoption of Section 330(a)(7), the percentage formula was well understood to be a cap on a trustee's compensation. However, the use of the word "commission" in that section strongly suggests, at least in Chapter 7 cases, a presumption entitlement to amount so calculated, rather than simply a cap.